# PERRY v. LEEKE, COMMISSIONER, SOUTH CARO-LINA DEPARTMENT OF CORRECTIONS, ET AL.

No. 87–6325.   Argued November 8, 1988—Decided January 10, 1989

*W. Gaston Fairey*, by appointment of the Court, 485 U. S. 1004, argued the cause and filed a brief for petitioner.

*Donald J. Zelenka*, Chief Deputy Attorney General of South Carolina, argued the cause for respondents. With him on the brief were *T. Travis Medlock*, Attorney General, and *James C. Anders.**

JUSTICE STEVENS delivered the opinion of the Court.

In *Geders* v. *United States*, 425 U. S. 80 (1976), we held that a trial court's order directing a defendant not to consult

---

**Jon May* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

his attorney during an overnight recess, called while the defendant was on the witness stand, violated his Sixth Amendment right to the assistance of counsel. Today we consider whether the *Geders* rule applies to a similar order entered at the beginning of a 15-minute afternoon recess.

## I

Petitioner was tried and convicted by a jury of participating in a brutal murder, kidnaping, and sexual assault. His defense was that he had not taken an active part in the abduction or the homicide and that his participation in the sexual assault was the product of duress. Evidence offered on his behalf indicated that he was mildly retarded and that he was a nonviolent person who could be easily influenced by others. He took the stand and began to testify in his own defense after a lunch recess.

At the conclusion of his direct testimony, the trial judge declared a 15-minute recess, and, without advance notice to counsel, ordered that petitioner not be allowed to talk to anyone, including his lawyer, during the break. When the trial resumed, counsel moved for a mistrial. The judge denied the motion, explaining that petitioner "was in a sense then a ward of the Court. He was not entitled to be cured or assisted or helped approaching his cross examination." App. 4–5.

The Supreme Court of South Carolina affirmed petitioner's conviction. *State* v. *Perry*, 278 S. C. 490, 299 S. E. 2d 324 (1983). It concluded that *Geders* was not controlling because our opinion in that case had emphasized the fact that a defendant would normally confer with counsel during an overnight recess and that we had explicitly stated that "we do not deal with . . . limitations imposed in other circumstances." *Geders* v. *United States, supra,* at 91. The state court explained:

> "We attach significance to the words 'normally confer.' Normally, counsel is not permitted to confer with his

defendant client between direct examination and cross examination. Should counsel for a defendant, after direct examination, request the judge to declare a recess so that he might talk with his client before cross examination begins, the judge would and should unhesitatingly deny the request." 278 S. C., at 491–494, 299 S. E. 2d, at 325–326.

Justice Ness dissented. He pointed out that a defendant would normally confer with his lawyer during a short routine recess and therefore that *Geders* should apply. Moreover, in his opinion the importance of protecting the defendant's fundamental right to the assistance of counsel far outweighs the negligible value of preventing the lawyer from "coaching" his or her client during a brief recess.[1]

Thereafter, petitioner sought and obtained a federal writ of habeas corpus. Applying settled law in the Fourth Circuit,

---

[1] "I agree with the Fourth Circuit decision in *[United States]* v. *Allen*, [542 F. 2d 630 (1976), cert. denied, 430 U. S. 908 (1977)], which held the Sixth Amendment right to counsel is so fundamental that it should never be interfered with for any length of time absent some compelling reason. See also *Stubbs* v. *Bordenkircher*, 689 F. 2d 1205 (4th Cir. 1982) [,cert. denied, 461 U. S. 907 (1983)]. To allow defendants to be deprived of counsel during court-ordered recesses is to assume the worst of our system of criminal justice, *i. e.*, that defense lawyers will urge their clients to lie under oath. I am unwilling to make so cynical an assumption, it being my belief that the vast majority of lawyers take seriously their ethical obligations as officers of the court.

"Even if that assumption is to be made, the *Geders* opinion pointed out that opposing counsel and the trial judge are not without weapons to combat the unethical lawyer. The prosecutor is free to cross-examine concerning the extent of any 'coaching,' or the trial judge may direct the examination to continue without interruption until completed. Additionally, as noted in *Allen*, a lawyer and client determined to lie will likely invent and polish the story long before trial; thus, the State benefits little from depriving a defendant of counsel during short recesses.

"I think the Sixth Amendment right to counsel far outweighs the negligible value of restricting that right for a few minutes during trial." *State* v. *Perry*, 278 S. C., at 495–497, 299 S. E. 2d, at 327–328 (dissenting opinion).

the District Court held that although a defendant has no right to be coached on cross-examination, he does have a right to counsel during a brief recess and he need not demonstrate prejudice from the denial of that right in order to have his conviction set aside. App. 17–19; see *United States* v. *Allen*, 542 F. 2d 630, 633–634 (1976), cert. denied, 430 U. S. 908 (1977); *Stubbs* v. *Bordenkircher*, 689 F. 2d 1205, 1206–1207 (1982), cert. denied, 461 U. S. 907 (1983).

The Court of Appeals, sitting en banc, reversed. 832 F. 2d 837 (1987). It agreed with the District Court that *Geders* applied and that constitutional error had occurred, but it concluded that petitioner's conviction should stand because the error was not prejudicial. This conclusion rested on the court's view that our opinions in *United States* v. *Cronic*, 466 U. S. 648 (1984), and *Strickland* v. *Washington*, 466 U. S. 668 (1984), implied that trial errors of this kind do not pose such a fundamental threat to a fair trial that reversal of a conviction should be automatic. After a review of the record, the Court of Appeals found that the evidence against petitioner was "overwhelming," 832 F. 2d, at 843, and that there was no basis for believing that his performance on cross-examination would have been different had he been given an opportunity to confer with his lawyer during the brief recess.

Four judges dissented. They argued that *Geders* had been properly interpreted in earlier Fourth Circuit cases to require automatic reversal and that the majority's reliance on *Strickland* was misplaced because the prejudice inquiry in that case was employed to determine whether a Sixth Amendment violation had occurred—not to determine the consequences of an acknowledged violation. Moreover, they reasoned that the prejudice inquiry was particularly inappropriate in this context because it would almost inevitably require a review of private discussions between client and lawyer.

Because the question presented by this case is not only important, but also one that frequently arises,[2] we granted certiorari, 485 U. S. 976 (1988).

---

[2] Federal and state courts since *Geders* have expressed varying views on the constitutionality of orders barring a criminal defendant's access to his or her attorney during a trial recess. See *Sanders* v. *Lane*, 861 F. 2d 1033 (CA7 1988) (denial of access to counsel during lunchtime recess while defendant still on witness stand violation of the Sixth Amendment without consideration of prejudice, but error held harmless); *Bova* v. *Dugger*, 858 F. 2d 1539, 1540 (CA11 1988) (15-minute recess "sufficiently long to permit meaningful consultation between defendant and his counsel" and therefore bar on attorney-defendant discussion constitutional violation even though defendant on stand during cross-examination); *Crutchfield* v. *Wainwright*, 803 F. 2d 1103 (CA11 1986) (en banc) (6 of 12 judges hold that if defendant or counsel indicates, on the record, a desire to confer during a recess, then any denial of consultation is a *per se* constitutional violation; 5 judges hold that restriction on discussion with counsel regarding testimony during brief recess near end of direct examination when no objection was raised does not constitute constitutional violation; 1 judge holds that a violation may exist if defendant and counsel actually desired to confer, but then prejudice need be shown to gain postconviction relief), cert. denied, 483 U. S. 1008 (1987); *Mudd* v. *United States*, 255 U. S. App. D. C. 78, 79–83, 798 F. 2d 1509, 1510–1514 (1986) (order permitting defense counsel to speak with client about all matters other than client's testimony during weekend recess while client on stand *per se* Sixth Amendment violation); *United States* v. *Romano*, 736 F. 2d 1432, 1435–1439 (CA11 1984) (Sixth Amendment violation when judge barred attorney-defendant discussion only regarding defendant's testimony during 5-day recess), vacated in part on other grounds, 755 F. 2d 1401 (CA11 1985); *United States* v. *Vasquez*, 732 F. 2d 846, 847–848 (CA11 1984) (refusing to adopt rule "that counsel may interrupt court proceedings at any time to confer with his or her client about a matter in the case," thus affirming denial of counsel's request to consult with client during court's sidebar explanation to counsel); *Stubbs* v. *Bordenkircher*, 689 F. 2d 1205, 1206–1207 (CA4 1982) (denial of access to counsel during lunch recess while defendant on stand constitutionally impermissible, but no deprivation of right to counsel here because no showing that defendant desired to consult with attorney and would have done so but for the restriction), cert denied, 461 U. S. 907 (1983); *Bailey* v. *Redman*, 657 F. 2d 21, 22–25 (CA3 1981) (no deprivation of right to counsel from order barring defendant from discussing ongoing testimony with anyone during overnight recess because no objection and no showing that defend-

## II

There is merit in petitioner's argument that a showing of prejudice is not an essential component of a violation of the

ant would have conferred with counsel but for order), cert. denied, 454 U. S. 1153 (1982); *United States* v. *DiLapi*, 651 F. 2d 140, 147–149 (CA2 1981) (denial of access to counsel during 5-minute recess while defendant on stand Sixth Amendment violation, but nonprejudicial in this case), cert. denied, 455 U. S. 938 (1982); 651 F. 2d, at 149–151 (Mishler, J., concurring) (no Sixth Amendment right to consult with attorney during cross-examination; instead, Fifth Amendment's due process requirements should govern whether such denial of access to counsel rendered trial unfair); *United States* v. *Conway*, 632 F. 2d 641, 643–645 (CA5 1980) (denial of access to counsel during lunch recess while defendant on stand violation of right to effective assistance of counsel); *United States* v. *Bryant*, 545 F. 2d 1035, 1036 (CA6 1976) (denial of access to counsel during lunch recess while defendant on stand violation of right to counsel); *United States* v. *Allen*, 542 F. 2d 630, 632–634 (CA4 1976) ("[A] restriction on a defendant's right to consult with his attorney during a brief routine recess is constitutionally impermissible," even while defendant is still on stand), cert. denied, 430 U. S. 908 (1977); *Ashurst* v. *State*, 424 So. 2d 691, 691–693 (Ala. Crim. App. 1982) (bar on defendant's access to attorney during defendant's testimony, including all breaks and recesses, violates right to counsel); *State* v. *Mebane*, 204 Conn. 585, 529 A. 2d 680 (1987) (denial of access to counsel during 21-minute recess while defendant on stand *per se* error), cert. denied, 484 U. S. 1046–1047 (1988); *Bailey* v. *State*, 422 A. 2d 956, 957–964 (Del. 1980) (order prohibiting defendant from discussing testimony with anyone during overnight recess, not objected to, not error, and if error, harmless); *McFadden* v. *State*, 424 So. 2d 918, 919–920 (Fla. App. 1982) (error by instructing counsel not to discuss defendant's ongoing testimony with him over holiday recess, but error held harmless because judge gave attorney ample opportunity to meet with defendant before proceeding to trial after recess); *Bova* v. *State*, 410 So. 2d 1343, 1345 (Fla. 1982) (denial of access to counsel during 15-minute break during cross-examination of defendant violation of Sixth Amendment, but harmless error); *People* v. *Stroner*, 104 Ill. App. 3d 1, 5–6, 432 N. E. 2d 348, 351 (1982) (no violation of right to counsel when judge barred defendant from discussing testimony, but permitted other contact with attorney, during 30-minute recess while defendant on stand), aff'd in part and rev'd in part on other grounds, 96 Ill. 2d 204, 449 N. E. 2d 1326 (1983); *Wooten-Bey* v. *State*, 76 Md. App. 603, 607–616, 547 A. 2d 1086, 1088–1092 (1988) (order denying defendant consultation with counsel concerning ongoing testimony during lunch

rule announced in *Geders*. In that case, we simply reversed the defendant's conviction without pausing to consider the extent of the actual prejudice, if any, that resulted from the defendant's denial of access to his lawyer during the overnight recess. That reversal was consistent with the view we have often expressed concerning the fundamental importance of the criminal defendant's constitutional right to be represented by counsel.[3] See, *e. g., United States* v. *Cronic*, 466 U. S., at 653–654; *Chapman* v. *California*, 386 U. S. 18, 23, n. 8 (1967); *Gideon* v. *Wainwright*, 372 U. S. 335 (1963); *Glasser* v. *United States*, 315 U. S. 60, 76 (1942).

The disposition in *Geders* was also consistent with our later decision in *Strickland* v. *Washington*, 466 U. S. 668 (1984), in which we considered the standard for determining whether counsel's legal assistance to his client was so inadequate that it effectively deprived the client of the protections guaranteed by the Sixth Amendment. In passing on such claims of "'actual ineffectiveness,'" *id.*, at 686, the "benchmark . . . must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Ibid.* More specifically, a defendant must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.*, at 687. Prior to our consideration of the standard for measuring the quality of the lawyer's work, however, we had expressly noted that direct governmental interference with the right to counsel is a different matter. Thus, we wrote:

---

break error, but error cured by judge's permitting discussion with counsel and opportunity for further redirect after defendant left stand); *People* v. *Hagen*, 86 App. Div. 2d 617, 446 N. Y. S. 2d 91 (1982) (Sixth Amendment violation when judge barred still-testifying defendant from discussing testimony with attorney during overnight recess).

[3] See U. S. Const., Amdt. 6 ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence").

"Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense. See, e. g., *Geders* v. *United States*, 425 U. S. 80 (1976) (bar on attorney-client consultation during overnight recess); *Herring* v. *New York*, 422 U. S. 853 (1975) (bar on summation at bench trial); *Brooks* v. *Tennessee*, 406 U. S. 605, 612–613 (1972) (requirement that defendant be first defense witness); *Ferguson* v. *Georgia*, 365 U. S. 570, 593–596 (1961) (bar on direct examination of defendant). Counsel, however, can also deprive a defendant of the right to effective assistance, simply by failing to render 'adequate legal assistance,' *Cuyler* v. *Sullivan*, 446 U. S., at 344. *Id.*, at 345–350 (actual conflict of interest adversely affecting lawyer's performance renders assistance ineffective)." *Id.*, at 686.

Our citation of *Geders* in this context was intended to make clear that "[a]ctual or constructive denial of the assistance of counsel altogether," *Strickland* v. *Washington, supra*, at 692, is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective. See *Penson* v. *Ohio, ante*, at 88; *United States* v. *Cronic, supra*, at 659, and n. 25. Thus, we cannot accept the rationale of the Court of Appeals' decision.

## III

We are persuaded, however, that the underlying question whether petitioner had a constitutional right to confer with his attorney during the 15-minute break in his testimony—a question that we carefully preserved in *Geders*—was correctly resolved by the South Carolina Supreme Court. Admittedly, the line between the facts of *Geders* and the facts of this case is a thin one. It is, however, a line of constitutional dimension. Moreover, contrary to the views expressed by

the dissenting member of the South Carolina Supreme Court, see n. 1, *supra,* it is not one that rests on an assumption that trial counsel will engage in unethical "coaching."

The distinction rests instead on the fact that when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice.

The reason for the rule is one that applies to all witnesses—not just defendants. It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed.[4] Such nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will con-

---

[4] See, *e. g., Jerry Parks Equipment Co.* v. *Southeast Equipment Co.,* 817 F. 2d 340, 342–343 (CA5 1987) (improper discussion of case by defense witness with defense counsel); *United States* v. *Greschner,* 802 F. 2d 373, 375–376 (CA10 1986) (circumvention of sequestration order where "witnesses indirectly defeat its purpose by discussing testimony they have given and events in the courtroom with other witnesses who are to testify"), cert. denied, 480 U. S. 908 (1987); *United States* v. *Johnston,* 578 F. 2d 1352, 1355 (CA10) (exclusion of witnesses from courtroom a "time-honored practice designed to prevent the shaping of testimony by hearing what other witnesses say"; judge should avoid circumvention of rule by "making it clear that witnesses are not only excluded from the courtroom but also that they are not to relate to other witnesses what their testimony has been and what occurred in the courtroom"), cert. denied, 439 U. S. 931 (1978); *Milanovich* v. *United States,* 275 F. 2d 716, 720 (CA4 1960) ("[O]rdinarily, when a judge exercises his discretion to exclude witnesses from the courtroom, it would seem proper for him to take the further step of making the exclusion effective to accomplish the desired result of preventing the witnesses from comparing the testimony they are about to give. If witnesses are excluded but not cautioned against communicating during the trial, the benefit of the exclusion may be largely destroyed"), aff'd in part and set aside in part on other grounds, 365 U. S. 551 (1961).

fine themselves to truthful statements based on their own recollections.[5] The defendant's constitutional right to confront the witnesses against him immunizes him from such physical sequestration.[6] Nevertheless, when he assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well. Accordingly, it is entirely appropriate for a trial judge to decide, after listening to the direct examination of any witness, whether the defendant or a nondefendant, that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer.

In other words, the truth-seeking function of the trial can be impeded in ways other than unethical "coaching." Cross-examination often depends for its effectiveness on the ability of counsel to punch holes in a witness' testimony at just the right time, in just the right way. Permitting a witness, including a criminal defendant, to consult with counsel after direct examination but before cross-examination grants the witness an opportunity to regroup and regain a poise and sense of strategy that the unaided witness would not possess. This is true even if we assume no deceit on the part of the witness; it is simply an empirical predicate of our system of adversary rather than inquisitorial justice that cross-examination of a witness who is uncounseled between direct examination and cross-examination is more likely to lead to the discovery of truth than is cross-examination of a witness who is given time to pause and consult with his attorney.

---

[5] See, *e. g.*, 6 J. Wigmore, Evidence §§ 1837–1838 (J. Chadbourn rev. 1976 and Supp. 1988); Fed. Rule of Evid. 615, "Exclusion of Witnesses."

[6] See U. S. Const., Amdt. 6 ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"); see also, *e. g.*, *Coy* v. *Iowa*, 487 U. S. 1012, 1016 (1988) ("We have never doubted . . . that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact").

"Once the defendant places himself at the very heart of the trial process, it only comports with basic fairness that the story presented on direct is measured for its accuracy and completeness by uninfluenced testimony on cross-examination." *United States* v. *DiLapi*, 651 F. 2d 140, 151 (CA2 1981) (Mishler, J., concurring), cert. denied, 455 U. S. 938 (1982).[7]

Thus, just as a trial judge has the unquestioned power to refuse to declare a recess at the close of direct testimony—or at any other point in the examination of a witness—we think the judge must also have the power to maintain the status quo during a brief recess in which there is a virtual certainty

---

[7] See *United States* v. *DiLapi*, 651 F. 2d, at 149–151 (Mishler, J., concurring) (emphasis in original):

"[W]e must also account for the function of cross-examination in the trial process in construing the Sixth Amendment guarantee of counsel.

"'The age-old tool for ferreting out truth in the trial process is the right to cross-examination. "For two centuries past, the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law."' 5 Wigmore, Evidence § 1367 (Chadbourn rev. 1974). The importance of cross-examination to the English judicial system, and its continuing importance since the inception of our judicial system in testing the facts offered by the defendant on direct, . . . suggests that the right to assistance of counsel did not include the right to have counsel's advice on cross-examination.

"The Court has consistently acknowledged the vital role of cross-examination in the search for truth. It has recognized that the defendant's decision to take the stand, and to testify on his own behalf, places into question his credibility as a witness and that the prosecution has the *right* to test his credibility on cross-examination. . . . Once the defendant places himself at the very heart of the trial process, it only comports with basic fairness that the story presented on direct is measured for its accuracy and completeness by uninfluenced testimony on cross-examination."

Cf. 5 J. Wigmore, Evidence § 1367 (J. Chadbourn rev. 1974) (calling cross-examination "the greatest legal engine ever invented for the discovery of truth"); 4 J. Weinstein, Evidence ¶ 800[01] (1988) (cross-examination, a "'vital feature' of the Anglo-American system," "'sheds light on the witness' perception, memory and narration,'" and "can expose inconsistencies, incompletenesses, and inaccuracies in his testimony").

that any conversation between the witness and the lawyer would relate to the ongoing testimony. As we have said, we do not believe the defendant has a constitutional right to discuss that testimony while it is in process.

The interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess. See *Geders* v. *United States*, 425 U. S., at 88. The fact that such discussions will inevitably include some consideration of the defendant's ongoing testimony does not compromise that basic right. But in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice.

Our conclusion does not mean that trial judges must forbid consultation between a defendant and his counsel during such brief recesses. As a matter of discretion in individual cases, or of practice for individual trial judges, or indeed, as a matter of law in some States, it may well be appropriate to permit such consultation.[8] We merely hold that the Federal Constitution does not compel every trial judge to allow the defendant to consult with his lawyer while his testimony is in

---

[8] Alternatively, the judge may permit consultation between counsel and defendant during such a recess, but forbid discussion of ongoing testimony. See *People* v. *Stroner*, 104 Ill. App. 3d, at 5–6, 432 N. E. 2d, at 351 (no violation of right to counsel when judge barred defendant from discussing testimony, but permitted other contact with attorney, during 30-minute recess while defendant on stand), aff'd in part and rev'd in part on other grounds, 96 Ill. 2d 204, 449 N. E. 2d 1326 (1983).

progress if the judge decides that there is a good reason to interrupt the trial for a few minutes.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE KENNEDY, concurring in part.

I join Parts I and III of the Court's opinion and the holding that petitioner was not denied his constitutional right to assistance of counsel. In view of our ruling, it is quite unnecessary to discuss whether prejudice must be shown when the right to counsel is denied. I would not address that issue, and so I decline to join Part II of the Court's opinion.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, dissenting.

In *Geders* v. *United States*, 425 U. S. 80 (1976), we held unanimously that a trial judge's order barring a defendant from conferring with his attorney during an overnight recess violated the defendant's Sixth Amendment right to the assistance of counsel. The majority holds today that when a recess is "short," unlike the "long recess" in *Geders*, a defendant has no such constitutional right to confer with his attorney. *Ante*, at 284. Because this distinction has no constitutional or logical grounding, and rests on a recondite understanding of the role of counsel in our adversary system, I dissent.

I

Contrary to the majority's holding, the Sixth Amendment forbids "*any* order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial." *Geders, supra*, at 92 (MARSHALL, J., concurring) (emphasis in original). This view is hardly novel; on the contrary, *every* Court of Appeals to consider this issue since *Geders*, including the en banc Fourth Circuit in this case, 832 F. 2d 837, 839 (1987), has concluded that a bar on

attorney-defendant contact, even during a brief recess, is impermissible if objected to by counsel. See *Sanders* v. *Lane*, 861 F. 2d 1033, 1039 (CA7 1988) (collecting cases). With very few exceptions, the state appellate courts that have addressed this issue have agreed. The majority attempts to sidestep this point, stating that the "[f]ederal and state courts since *Geders* have expressed *varying views* on the constitutionality of orders barring a criminal defendant's access to his or her attorney during a trial recess." *Ante*, at 277, n. 2 (emphasis added). To the extent there has been disagreement in the lower courts, however, it has been limited to the separate question whether a Sixth Amendment violation predicated on a bar order should be subject to a prejudice or harmless-error analysis—the sole question on which the Court granted certiorari in this case.

In concluding that bar orders violate the Sixth Amendment, the lower courts have faithfully reflected this Court's long-expressed view that "the Assistance of Counsel" guaranteed under the Constitution perforce includes the defendant's right to confer with counsel about all aspects of his case:

> " 'The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. . . . [A defendant] is unfamiliar with the rules of evidence. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he [may] have a perfect one. He requires the guiding hand of counsel at every step of the proceedings against him.' " *Powell* v. *Alabama*, 287 U. S. 45, 68–69 (1932), quoted in *Geders*, *supra*, at 88–89.

See also *Johnson* v. *Zerbst*, 304 U. S. 458, 462–463 (1938); *Gideon* v. *Wainwright*, 372 U. S. 335, 343–345 (1963); *United States* v. *Wade*, 388 U. S. 218, 224 (1967); *Argersinger* v. *Hamlin*, 407 U. S. 25, 31–36 (1972); *United States* v. *Cronic*, 466 U. S. 648, 659 (1984). This long line of cases, which stands for the proposition that a defendant has the right to the aid of counsel at each critical stage of the adversary proc-

ess, is conspicuously absent from the majority's opinion. The omission of this constitutional legacy is particularly glaring given that "[i]t is difficult to perceive a more critical stage . . . than the taking of evidence on the defendant's guilt." *Green* v. *Arn*, 809 F. 2d 1257, 1263 (CA6 1987). Instead, after an obligatory nod of the head to the fundamental nature of the right to counsel, the majority strings together several unstated assumptions and unsupported assertions and concludes that attorney-defendant discussions during short trial recesses may be completely barred because they might disserve the trial's truth-seeking function. The majority's conclusory approach ill befits the important rights at stake in this case.

## A

The majority begins its analysis by stating that a defendant "has no constitutional right to consult with his lawyer *while he is testifying*." *Ante*, at 281 (emphasis added). This truism is beside the point. Neither Perry nor his counsel sought to have Perry's "testimony interrupted in order to give him the benefit of counsel's advice," *ibid.*; nor has Perry suggested that he had a constitutional right to the interruption. This case instead involves the separate question whether a defendant has a right to talk to his lawyer *after* the trial judge has called a recess for some reason independent of the lawyer's desire to talk to the defendant or the defendant's desire to talk to his lawyer.

The majority further blurs the real issue in this case by describing the practice of not allowing defendants or lawyers to interrupt the defendant's testimony as a corollary of the "broader rule that witnesses may be sequestered." *Ibid.* The majority even provides a lengthy footnote which contains citations to several Court of Appeals cases discussing the purposes of witness sequestration. *Ante*, at 281, n. 4. The flaw in the majority's logic is that sequestration rules are inapplicable to defendants. Defendants, as the majority later acknowledges, enjoy a constitutional right under

the Sixth Amendment to confront the witnesses against them. *Ante,* at 282; see also *Geders,* 425 U. S., at 88.

The majority's false premise—that the issue is whether a defendant has the right to consult with his lawyer "while he is testifying"—naturally conjures up a greater-includes-the-lesser argument: Perry had no right to interrupt his testimony; he therefore had no reasonable expectation that he would be permitted to confer with counsel during any interruption provided by the trial judge. Yet, we rejected this facile argument in *Geders.* There, the trial judge sought to justify his bar order on the ground that it was merely an "accident" that he had called a recess during the defendant's testimony. *Geders,* 425 U. S., at 83, n. 1. In dismissing this notion, we did not frame the inquiry as whether *recesses* normally occur during the course of a defendant's testimony. Instead, we asked whether *consultations* normally occur during recesses called for some independent reason by the trial judge. *Id.,* at 88; see also *Sanders* v. *Lane, supra,* at 1036, n. 1; 832 F. 2d, at 849, n. 4 (Winter, C. J., dissenting).

To the extent the majority recognizes that the dispositive fact is not a defendant's right to interrupt, but rather the legitimacy of his expectation that he may speak with his lawyer during such an interruption, it does so by grounding its holding on a general "rul[e]" forbidding attorney-witness contact between a witness' direct and cross-examination. *Ante,* at 282. This "rule," we are told, is based on the view "that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer." *Ibid.* This "rule" is applicable to a defendant, the majority contends, because when a defendant takes the stand, the rules applicable to nonparty witnesses are "generally applicable to him as well." *Ibid.*

The defects in this line of reasoning are manifold. In the first place, the majority cites no authority whatsoever for its

"rule." Even if such authority exists, the presence of contrary authority undercuts any suggestion that settled practice renders unreasonable a defendant's expectation that he will be able to speak with his lawyer during a brief recess.[1] One need look no further than the facts of this case to see that the majority's "rule" is often honored in the breach. The trial judge declared at least three recesses while witnesses for the State were testifying, Tr. 213, 274, 517; two of these recesses came at the end of direct testimony but before cross-examination had begun. *Id.*, at 213, 517. During none of these recesses did the trial judge issue a bar order. The State's witnesses thus were free to consult with anyone, including the prosecutors, during these breaks. Similarly, in nearly every case cited by the majority in its collection of post-*Geders* cases, *ante*, at 277–279, n. 2, there is no indication that witnesses for the State were barred from speaking with the prosecutor or their attorneys during trial recesses.

Even if the majority is correct that trial courts routinely bar attorney-witness contact during recesses between direct and cross-examination, its lumping together of defendants with all other witnesses would still be flawed, for it ignores the pivotal fact that the Sixth Amendment accords defendants constitutional rights above and beyond those accorded witnesses generally.[2] We recognized the defendant's unique

---

[1] See, *e. g.*, 23 C. J. S., Criminal Law § 1025 (1961); *United States ex rel. Lovinger* v. *Circuit Court for the 19th Judicial District*, 652 F. Supp. 1336, 1346 (ND Ill. 1987), aff'd, 845 F. 2d 739 (CA7 1988); *Griffin* v. *State*, 383 So. 2d 873, 878–879 (Ala. Crim. App. 1980); *People* v. *Pendleton*, 75 Ill. App. 3d 580, 594–595, 394 N. E. 2d 496, 506–507 (1979); cf. *United States* v. *Allen*, 542 F. 2d 630, 633, n. 1 (CA4 1976) ("While the sequestering of witnesses is of ancient origin the practice has never been universal, which suggests that the danger of influencing witnesses feared so much by some is not at all feared by others").

[2] Likewise, the majority's equation of a defendant's discussions with his attorney with a defendant's discussions with "third parties," *ante*, at 282, seriously misapprehends the nature of Sixth Amendment rights.

status in *Geders:* "the petitioner was not simply a witness; he was also the defendant. . . . A nonparty witness ordinarily has little, other than his own testimony, to discuss with trial counsel; a defendant in a criminal case must often consult with his attorney during the trial." 425 U. S., at 88; see also *United States* v. *DiLapi*, 651 F. 2d 140, 148 (CA2 1981) ("The fact that other witnesses were cautioned not to speak to anyone during recesses does not justify a prohibition upon defendant-lawyer conversations").[3] The majority, in its haste, today overlooks this axiomatic distinction.[4]

## B

The most troubling aspect of the majority's opinion, however, is its assertion that allowing a defendant to speak with his attorney during a "short" recess between direct and cross-examination invariably will retard the truth-seeking function of the trial. Although this notion is described as an "empirical predicate" of our adversary system, *ante*, at 282, the majority provides not a shred of evidence to support it. Furthermore, the majority fails to acknowledge that, in

---

[3] Cf. *Rock* v. *Arkansas*, 483 U. S. 44, 57–58, and n. 15 (1987); *Glasser* v. *United States*, 315 U. S. 60, 71 (1942). The trial judge did at one point recognize that defendant Perry was not like the other witnesses. The significance of this distinction escaped him, however, for he justified the bar order imposed on Perry in part on the ground that "no one is on trial but Mr. Perry . . . . The 6th Amendment rights apply only to one who is on trial." App. 5. This reasoning stands the Sixth Amendment on its head.

[4] The majority errs, furthermore, in assuming, *ante*, at 282, that defendants are subject to the same rules of cross-examination as nonparty witnesses. See generally E. Cleary, McCormick on Evidence §§ 21–26 (3d. ed. 1984) (discussing different views on permissible scope of cross-examination of defendants and nonparty witnesses); §§ 41–44 (discussing different subjects on which defendants and nonparty witnesses may be impeached); §§ 130–140 (discussing different ways in which defendants and nonparty witnesses may invoke their self-incrimination rights while testifying); compare Fed. Rule Evid. 404(a)(1) (character evidence of the accused) with Fed. Rule Evid. 404(a)(3) (character evidence of a witness).

*Geders,* we never equated the attorney-client contact which we held constitutionally mandated with the evasion of truth.

Central to our Sixth Amendment doctrine is the understanding that legal representation for the defendant at every critical stage of the adversary process *enhances* the discovery of truth because it better enables the defendant to put the State to its proof. As the author of today's majority opinion wrote for the Court earlier this Term:

> "The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth—as well as fairness—is 'best discovered by powerful statements on both sides of the question.' Absent representation, however, it is unlikely that a criminal defendant will be able adequately to test the government's case, for, as Justice Sutherland wrote in *Powell* v. *Alabama,* 287 U. S. 45 (1932), '[e]ven the intelligent and educated layman has small and sometimes no skill in the science of law.' *Id.,* at 69." *Penson* v. *Ohio, ante,* at 84 (citations omitted).

Nowhere have we suggested that the Sixth Amendment right to counsel turns on what the defendant and his attorney discuss or at what point during a trial their discussion takes place. See generally *Strickland* v. *Washington,* 466 U. S. 668, 684–686 (1984); *United States* v. *Cronic,* 466 U. S., at 653–657; *Polk County* v. *Dodson,* 454 U. S. 312, 318–319 (1981); *Herring* v. *New York,* 422 U. S. 853, 857–858, 862 (1975).

With this understanding of the role of counsel in mind, it cannot persuasively be argued that the discovery of truth will be *impeded* if a defendant "regain[s] . . . a sense of strategy" during a trial recess. *Ante,* at 282. If that were so, a bar order issued during a 17-hour overnight recess should be sustained. Indeed, if the argument were taken to its logical extreme, a bar on *any* attorney-defendant contact, even before trial, would be justifiable. Surely a prosecutor would have

greater success "punch[ing] holes," *ibid.*, in a defendant's testimony under such circumstances. Indeed, the prosecutor would then be assured that the defendant has not had "an opportunity to regroup and regain a poise . . . that the unaided witness [does] not possess." *Ibid.* In other words, the prosecutor would be more likely to face the punch-drunk witness who the majority thinks contributes to the search for truth.[5]

The majority's fears about the deleterious effects of attorney-defendant contact during trial recesses are vastly overstated. Vigorous cross-examination is certainly indispensable in discerning the trustworthiness of testimony, but I would think that a few soothing words from counsel to the agitated or nervous defendant facing the awesome power of the State might *increase* the likelihood that the defendant will state the truth on cross-examination. The value of counsel in calming such a defendant would seem especially apparent in this case given that Perry, who the majority describes as "mildly retarded," *ante,* at 274, was on trial for his life.[6]

---

[5] The majority claims that its decision does not "res[t] on an assumption that trial counsel will engage in unethical coaching." *Ante,* at 281. Nonetheless, I am inclined to believe that the majority's fears that the defendant will "regain . . . a sense of strategy" are motivated, at least in part, by an underlying suspicion that defense attorneys will fail to "respect the difference between assistance and improper influence." *Geders* v. *United States,* 425 U. S. 80, 90, n. 3 (1976). "If our adversary system is to function according to design," however, "we must assume that an attorney will observe his responsibilities to the legal system, as well as to his client." *Id.,* at 93 (MARSHALL, J., concurring); see also *United States* v. *Allen,* 542 F. 2d, at 633 ("[A]ll but very few lawyers take seriously their obligation as officers of the court and their proper role in the administration of justice. We think the probability of improper counseling, *i. e.,* to lie or evade or distort the truth, is negligible in most cases").

[6] At trial, a psychologist and a psychiatrist testified regarding Perry's personality and mental health. They stated that Perry, then 21 years old, had an I. Q. of 86, had encountered learning difficulties in school, had dropped out by the ninth grade, and had a childlike personality. They also testified that Perry often had difficulty distinguishing reality from fantasy

Furthermore, to remind a defendant that certain cross-examination questions might implicate his right against self-incrimination or relate to previously excluded evidence, or to caution a defendant to mind his demeanor at all times, is merely to brace the defendant for the "legal engine" steaming his way. *Ante*, at 283, n. 7, quoting 5 J. Wigmore, Evidence § 1367 (J. Chadbourn rev. 1974). I cannot accept the view that discussions of this sort necessarily threaten the trial's truth-seeking function. To the extent that they might in some circumstances, it is important to remember that truth would not be sacrificed in the name of some obscure principle—a constitutional command hangs in the balance. See *Geders*, 425 U. S., at 91.

Although the majority appears to believe that attorney-defendant recess discussions on any subject are inconsistent with "the discovery of truth," *ante*, at 282, it finds discussions regarding testimony to be particularly pernicious. This distinction finds no support in our Sixth Amendment cases. But even if it did, the majority's logic on this point would remain inscrutable. The majority distinguishes "long" recesses, such as the 17-hour recess at issue in *Geders*, from the "short" 15-minute recess in this case on the ground that it is "appropriate to presume," or, alternatively, that there is "a

and that he suffered from "hysterical reaction," an inability to cope with stressful situations. Tr. 1048–1049, 1053–1054, 1087, 1091–1098.

One can only assume that the treatment the trial judge accorded Perry during the 15-minute recess exacerbated his sense of fright or trepidation. After the trial judge *sua sponte* ordered the recess, Perry's counsel attempted to confer with Perry in order to "answer his questions and also to make sure he understood his rights on cross-examination." App. 7. The bar order, however, prevented him from doing so. During the recess, Perry was "taken out of the courtroom and placed in a very small room with no window and no other person, just one chair, enclosed in about a six by six room, with no one to talk to." Tr. of Oral Arg. 8. Apparently, Perry's counsel was not even allowed to explain to Perry why they were not permitted to confer during the recess. Treatment of this sort may well have had an adverse effect on Perry's ability to retain his composure and testify truthfully on cross-examination.

virtual certainty," *ante*, at 283, 284, that any discussion during a 15-minute recess will focus exclusively on the defendant's upcoming testimony. Once again, the majority reasons by assertion; it offers no legal or empirical authority to buttress this proposition. While this assertion might have some validity with respect to nonparty witnesses, who might have little else to discuss with the parties' attorneys, see *Geders*, *supra*, at 88, it defies common sense to argue that attorney-defendant conversations regarding "the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain," *ante*, at 284, cannot, or do not, take place during relatively brief recesses.

For example, while a defendant is on the stand during direct examination, he may remember the name or address of a witness, or the location of physical evidence, which would be helpful to his defense. It would take mere seconds to convey this information to counsel. As a matter of sound trial strategy, defense counsel might believe that this new witness or evidence would have the most impact if presented directly after the defendant concluded his testimony. But under the majority's approach, defense counsel would not even learn about this witness or evidence until the defendant steps down from the stand. Alternatively, the defendant might be so discouraged by his testimony on direct examination as to conclude that he should attempt plea negotiations with the prosecution immediately, or accept an outstanding plea bargain offer. It need only take seconds for him to convey this to his lawyer, particularly if they had previously discussed the advisability of pleading guilty. This opportunity might be forever lost, however, if a bar order issues and the prosecution conducts a successful cross-examination. These are just a few examples of the tactical exchanges which defendants and their attorneys might have midtrial; there is no reason to believe such exchanges predominantly occur during overnight recesses rather than during brief recesses. Indeed, an overnight recess "may entail a deprivation of little more than the

fifteen minutes at stake here because many attorneys will devote the vast majority of such an extended break to preparation for the next day of trial, while sending the client home to sleep, or back to jail." 832 F. 2d, at 849 (Winter, C. J., dissenting).[7]

Yet another perverse aspect of the majority's opinion is its recognition that a defendant has a "constitutional right" to discuss those "matters that go beyond the content of the defendant's own testimony." *Ante*, at 284. Having recognized this right, one would expect the majority to *require* trial judges to permit attorney-defendant contact during all recesses, no matter how brief, so long as trial testimony is not discussed. Instead, the majority merely suggests in a footnote that trial judges "*may* permit consultation between counsel and defendant during such a recess, but forbid discussion of ongoing testimony." *Ante*, at 284, n. 8 (emphasis added). If attorney-client discussions regarding matters other than testimony have constitutional stature, they surely deserve more protection than the majority offers today. It may well be that Perry and his counsel would have discussed "matters that [went] beyond the content of [Perry's] own testimony," *ante*, at 284; Perry was, however, denied this constitutional right. In allowing trial judges to ban *all* brief recess consultations, even those including or limited to discussions regarding nontestimonial matters, the majority needlessly fires grapeshot where, even under its own reasoning, a single bullet would have sufficed.[8]

---

[7] Chief Judge Winter further observed:

"Few categories of constitutional error so undermine the adversary system as to warrant reversal without any proof of prejudice in a particular case. Denial of the assistance of counsel during a critical stage of criminal proceedings is one such category of error. Whether the deprivation of counsel spans an entire trial or but a fraction thereof, it renders suspect any result that is obtained." 832 F. 2d, at 845.

[8] The majority assumes that it is possible to distinguish discussions regarding trial strategy from discussions regarding testimony. I am not so sure. Assume, for example, that counsel's direct examination of the

296

## II

Today's decision is regrettable in two further respects.   In
practical terms, the majority leaves the trial judge "to guess
at whether she has committed a constitutional violation"
when she issues a recess bar order.   *Sanders* v. *Lane*, 861 F.
2d, at 1037.   Is it "appropriate to presume" that a 30-minute
recess will involve a discussion of nontestimonial matters?
How about a lunch break?   Does it matter that defense coun-
sel has promised only to discuss nontestimonial matters with
his client?   Does the majority's rationale encompass recesses
during the defendant's direct or redirect testimony, or just
those after the direct examination has concluded?   These are
not abstract inquiries, but the sort that have arisen, and will
continue to arise, on a routine basis.   See *id.*, at 1036–1037
(collecting cases).   By not even providing a practical frame-
work in which to answer these questions, the majority en-
sures that defendants, even those in adjoining courtrooms,
will be subject to inconsistent practices.   Such inconsistency
is untenable when a critical constitutional right is at stake.

The majority's standardless approach guarantees a new
bout of appellate litigation during which lower courts ineluc-
tably will issue conflicting decisions as to the point at which a
"short" recess bar order becomes a constitutionally imper-
missible "long" recess bar order.   Given that "clarification is

---

defendant inadvertently elicits damaging information that can be effec-
tively neutralized on redirect only if the defendant has the opportunity to
explain his direct testimony to counsel.   If a recess were called, the ensu-
ing attorney-defendant discussion would seem to be as much about trial
strategy as about upcoming testimony.   Without a chance to speak with
the defendant, counsel will be hampered in knowing whether redirect is
even advisable.   The majority's failure to spell out the difference—if there
is one—between testimonial and nontestimonial discussions may well "have
a chilling effect on cautious attorneys, who might avoid giving advice on
non-testimonial matters for fear of violating [a court order barring recess
discussions of testimonial matters]."   *Mudd* v. *United States*, 255 U. S.
App. D. C. 78, 81, 798 F. 2d 1509, 1512 (1986).

feasible," *United States* v. *Ross,* 456 U. S. 798, 804 (1982), and indisputably desirable in this area of law, the majority's willingness to tolerate such ambiguity is dismaying.   See *United States* v. *Allen,* 542 F. 2d 630, 633 (CA4 1976).   The majority purports to draw a "line of constitutional dimension," *ante,* at 280, but it is one which lower courts, faced with a continuum of recess possibilities, will find impossible to discern.

Finally, today's decision marks a lapse in this Court's commitment to fundamental fairness for criminal defendants. The majority wholly ignores the trial judge's uneven imposition of bar orders.   No bar order issued when recesses were called during testimony by the State's witnesses, but when a recess was called at the conclusion of Perry's direct testimony, the trial judge suddenly became concerned that witnesses might be "cured or assisted or helped approaching . . . cross examination."   App. 4–5.   Perry's counsel objected that Perry was being unfairly singled out, but the trial judge responded that he felt compelled to act as he did to ensure, of all things, "fairness to the state."   App. 5.   This peculiar sense of obligation meant that Perry was removed from the courtroom and held incommunicado for the duration of the recess.[9]

Needless to say, the due process concerns underpinning the Sixth Amendment right to counsel are designed to ensure a fair trial for the defendant, not the State.   See generally *Strickland* v. *Washington,* 466 U. S., at 684–685; *United*

---

[9] In addition to the bar order issued against Perry, the trial judge ordered Perry's wife not to speak with anyone during a recess called after she had completed her direct testimony on behalf of her husband.   Defense counsel protested that "this was not done during the state's case.   It is only being done on the defendant's case and it is being done without even the request of the state . . . .   And I again urge the Court that it appears to show some bias on the part of the Court."   Tr. 904.   The trial judge rebuffed the objection: "I don't apologize for it.   I'm in charge of this trial and I'm going to see that it *remains fair to all parties*."   *Ibid.* (emphasis added).

*States* v. *Cronic*, 466 U. S., at 653–656; *United States* v. *Morrison*, 449 U. S. 361, 364 (1981). By ensuring a defendant's right to have counsel, which includes the concomitant right to communicate with counsel at every critical stage of the proceedings, see *Powell* v. *Alabama*, 287 U. S. 45, 68–69 (1932), the Constitution seeks "to minimize the imbalance in the adversary system." *United States* v. *Ash*, 413 U. S. 300, 309, (1973). The majority twice disserves this noble goal—by isolating the defendant at a time when counsel's assistance is perhaps most needed, and by ignoring the stark unfairness of according prosecution witnesses the very prerogatives denied the defendant. The Constitution does not permit this new restriction on the Sixth Amendment right to counsel. I dissent.