**Eugene ULRICH, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF TREASURY, Office of the Comptroller of the Currency, Respondent.**

**Susan Diehl McCarthy, Petitioner,**

v.

**United States Department of Treasury, Office of the Comptroller of the Currency, Respondent.**

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Eugene Ulrich, Petitioner,

v.

United States Department of Treasury, Office of the Comptroller of the Currency, Respondent.

Susan Diehl McCarthy, Petitioner,

v.

Board of Governors of the Federal Reserve System, Respondent.

Nos. 03–73491, 03–73591, 03–73854, 03–73997.
TREA No. AA–EC–00–40.

United States Court of Appeals, Ninth Circuit.

Argued & Submitted April 14, 2005.

Decided April 27, 2005.

388

Joseph P. Russoniello, Cooley Godward LLP, Lawrence A. Callaghan, John R. Hurley, San Francisco, CA, for Petitioners.

Paul E. Chism, Kenneth J. Lennon, Attorney, Office of the Comptroller, Katherine Wheatley, Board of Governors of the Federal Reserve, Jennifer Johnsonn, Secretary, Office of the Comptroller of the Currency Enforcement & Compliance Di-

vision, Robert Pasley, Washington, DC, Manpreet (Jimmy) Singh, Office of the Comptroller of the Currency, Laura C. Pirri, Cooley Godward, San Francisco, CA, for Respondents.

Before HUG, THOMPSON, and RYMER, Circuit Judges.

MEMORANDUM *

Eugene Ulrich and Susan Diehl McCarthy (collectively, "Ulrich") petition for review of the Comptroller of the Currency's (Comptroller) orders directing them to pay restitution and civil money penalties, and the Board of Governors of the Federal Reserve System's (Board) orders prohibiting them from further participation in the affairs of any financial institution. We deny the petitions.

**I**

■ The administrative law judge (ALJ) neither abused her discretion nor denied due process in taking official notice of Six River National Bank's (the Bank) status as an insured depository institution. The ALJ's taking of official notice complied with the Comptroller's rules of practice and procedure, *see* 12 C.F.R. § 19.36(b)(1), and Ulrich was given a fair opportunity to rebut the noticed facts before the ALJ. *Cf. Castillo–Villagra v. INS,* 972 F.2d 1017, 1029 (9th Cir.1992); *Getachew v. INS,* 25 F.3d 841, 845 (9th Cir. 1994). In light of the Federal Deposit Insurance Corporation's (FDIC) representation that the information provided on its website was reasonably accurate and current, the website's disclaimer of legal liability did not render its content insuffi-

ciently reliable for official notice. Finally, the website's statement that the Bank had been FDIC-insured "since December 27, 1987" provided substantial evidence that the Bank was FDIC-insured in December 1996.

**II**

■ Substantial evidence supports the Board's determination that Ulrich's approval of loans in violation of the lending limit involved a willful disregard for the safety and soundness of the Bank. *See* 12 U.S.C. § 1818(e)(1). Ulrich was aware that the Bank had already loaned Northcoast Hardwoods (Northcoast) an amount near the maximum allowed by law. He also knew that the loans to the borrowers would be re-loaned to Northcoast, and that there was no assurance that the loans to Northcoast would ever be converted to equity. Thus, Ulrich knew that the loans to the borrowers directly benefitted Northcoast, *see* 12 C.F.R. § 32.5, thereby violating the lending limit. Ulrich's approval of the loans exhibited "a degree of culpability well beyond mere negligence," *Kim v. Office of Thrift Supervision,* 40 F.3d 1050, 1054 (9th Cir.1994), and constituted "deliberate conduct which exposed the bank to abnormal risk of loss or harm contrary to prudent banking practices." *De la Fuente v. FDIC,* 332 F.3d 1208, 1223 (9th Cir.2003) (quoting *Grubb v. FDIC,* 34 F.3d 956, 961–62 (10th Cir.1994)).

■ Substantial evidence also supports the Comptroller's conclusion that Ulrich's approval of the loans "involved a reckless disregard for the law." 12 U.S.C. § 1818(b)(6)(A)(ii). In knowingly approving loans to the borrowers that would be re-loaned to Northcoast, Ulrich acted "with clear neglect for, or plain indiffer-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ence to," the laws and regulations governing lending limits. *Simpson v. Office of Thrift Supervision,* 29 F.3d 1418, 1425 (9th Cir.1994). In addition, the egregious violation of the Bank's lending limit resulted in a risk of loss "so obvious that [Ulrich] should have been aware of it." *Id.*

### III

■ Even if the notice of intent inadequately informed Ulrich of the full range of charges against him, Ulrich was not denied due process because he "understood the issue[s] and was afforded full opportunity to justify [his] conduct." *Golden Grain Macaroni Co. v. FTC,* 472 F.2d 882, 885 (9th Cir.1972) (citation and internal quotation marks omitted). Both Ulrich's and the Comptroller's pre-hearing statements, filed weeks before the hearing commenced, discussed the alleged unsafe or unsound practices. Moreover, none of the ALJ's rulings contested by Ulrich, viewed independently or in conjunction with the notice of intent, denied him the opportunity to defend himself against the Comptroller's allegations. Ulrich failed timely to disclose that his expert, John Moulton, would testify regarding creditworthiness, and failed to designate Moulton as a rebuttal expert. Ulrich's counsel extensively cross-examined both Robert Tornborg and Matthew Johnson regarding the same subject matter sought through the subpoena applications, and the ALJ did not improperly limit the scope of cross examination. Finally, the ALJ's sequestration order, which prohibited only discussion of ongoing testimony during breaks, did not deny Ulrich the right to counsel, *cf. Perry v. Leeke,* 488 U.S. 272, 281, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), nor has Ulrich identified any prejudice resulting from the order.

### IV

■ Ulrich's challenges to the Board's determination that he committed unsafe or unsound practices lack merit. The Board concluded that the specific policy violations committed by Ulrich were unacceptably risky whether the loans were characterized as unguaranteed capital loans for a start-up business; loans for speculative investments, in this case a delinquent borrower with negative net worth unable to pay the supply and production costs necessary to fill its orders; or as unsecured term capital loans. The Board did not err in concluding that approval of a loan fraught with such risk was an unsafe or unsound practice. *See De la Fuente,* 332 F.3d at 1222 (defining an unsafe or unsound practice).

■ The Board also properly determined that Ulrich's handling of the loan approval process constituted an unsafe or unsound practice. The Board based its determination on much more than Ulrich's failure to meet with the borrowers. With knowledge of Northcoast's poor financial condition and inability to meet existing obligations, Ulrich approved five loans within a few days to friends and business associates of Matthew Galt and allowed Galt to act as the intermediary between the Bank and the borrowers. The Board's conclusion that Ulrich conducted deficient credit analyses of the borrowers, analyzed by the Board as part of the same unsafe or unsound practice, is supported by substantial evidence.

Finally, Ulrich's unsafe or unsound practices had "a reasonably direct effect on [the Bank's] financial soundness." *De la Fuente,* 332 F.3d at 1222 (quoting *Simpson,* 29 F.3d at 1425). As the Board noted, the loans resulted in a $232,000 loss to the Bank.

## V

The Comptroller did not err in determining the civil money penalties. Assuming that the Comptroller had the burden of producing evidence of ability to pay, *see Bosma v. USDA,* 754 F.2d 804, 810 (9th Cir.1984), Ulrich does not dispute that there was sufficient evidence in the record for the Comptroller to weigh ability to pay as a mitigating factor. Furthermore, the Comptroller determined the amount of the penalties based on all mitigating factors, including ability to pay. *See* 12 U.S.C. § 1818(i)(G).

**PETITIONS DENIED.**