[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15863
_____

D. C. Docket No. 08-20544-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL BARBEITE,

Defendant-Appellant.


_____

No. 10-10838
_____

D. C. Docket No. 1:08-cr-20544-PAS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALTER F. PROANO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(August 2, 2012)

Before BARKETT, EDMONDSON, and SUHRHEINRICH,[*] Circuit Judges.

PER CURIAM:

A jury convicted Defendants Manuel Barbeite and Walter F. Proano of healthcare fraud and of conspiracy to commit healthcare fraud. On appeal -- by briefs and oral argument -- Barbeite and Proano argue that they did not receive a fair trial because the district court committed (they say) a series of reversible errors. No reversible error is presented in this case; we affirm the district court's decisions.

Defendants, who were both physicians, worked at an HIV clinic. Briefly stated, Defendants and their co-conspirators (other clinic employees and the clinic's owners) submitted false Medicare and Medicaid claims with the agreement

_____

[*] Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

of their patients, paid these patients cash, and kept the remaining funds for themselves.

Defendants challenge several aspects of their joint criminal trial,[1] but we will elaborate on three issues only.  First we discuss a decision of the trial judge that both defendants appeal: admitting Dr. Wohlfeiler's expert testimony.  Second, we discuss two issues about Proano's Sixth Amendment right to counsel.  (Barbeite does not join Proano in the Sixth Amendment issues).

a.

The district court qualified Dr. Wohlfeiler as an expert in the diagnosis and treatment of HIV and AIDS.  Wohlfeiler testified about the medical aspects of the pertinent Medicare/Medicaid fraud scheme, a scheme that involved false diagnoses

---

[1] Defendants argue that they did not receive a fair trial because the district court allowed the jury to hear evidence of their co-conspirators' guilty pleas and because the prosecutors improperly vouched for the credibility of witnesses.  Defendants argue that their indictment was constructively amended by the government's arguments and by the district court's jury instruction.  Defendants also contend that the district court improperly admitted Dr. Michael Wohlfeiler's expert testimony, which we discuss in the body of the opinion.  And Defendants argue that these errors, individually and cumulatively, warrant reversal of their convictions.  We affirm the district court's decisions of all of those issues.  Proano raises issues of his own, issues in which Barbeite does not join.  Proano raises two trial issues: that the district court should have admitted him as an expert witness and that the district court should have given the jury a limiting instruction after the prosecutor asked Proano a question about Proano's previous employer.  We affirm the district court for those issues.  Proano, also without Barbeite, raises two Sixth Amendment issues, which we discuss in the body of the opinion.

3

of and fake treatments for low blood platelet count disorders that are most commonly suffered by -- although rare among -- AIDS patients.  He reviewed the files of patients who had visited Defendants' HIV clinic, explained a pattern of problematic discrepancies that he observed in all of the clinic's patient files, and testified about the problems he found in particular files of Defendants' patients.

Defendants argue that we should reverse their convictions; they say parts of Wohlfeiler's testimony were improperly admitted.  For all but one of their complaints about Wohlfeiler's testimony, Defendants made no objection at trial.

Defendants argue that these unobjected-to purported errors require reversal of their convictions: Defendants argue that Wohlfeiler was not qualified as an expert about Medicare policies, and so should have given no testimony about whether medical treatments complied with those policies;[2] Defendants argue that Wohlfeiler improperly gave opinions that would be relevant to medical malpractice, but not to Medicare fraud; Defendants argue that allowing Wohlfeiler's testimony about his own patient files was error because Defendants could not examine Wohlfeiler's patient files;[3] and Defendants argue that Wohlfeiler

---

[2] Wohlfeiler was not admitted as an expert on those policies and did not testify about the policies, except on cross-examination when he was specifically asked about them.

[3] Defendants objected at trial to the admission of the actual patient files; that objection was sustained.  Defendants appeal the admission of Wohlfeiler's testimony about his patient files, to which Defendants made no objection at trial.

4

improperly testified that Barbeite's diagnosis and treatment of a particular patient was fraudulent.

In addition, Defendants appeal one part of Wohlfeiler's testimony that the district court allowed over their objection: Wohlfeiler, answering a hypothetical question, said that the only reason for a physician to give a certain course of treatment would be to generate income.[4]  Defendants argue that Wohlfeiler impermissibly offered a legal conclusion that was unfairly prejudicial to Defendants.

We review the district court's decisions to which no objection was made for plain error.  We will reverse on those issues only if there was "error," which was "plain," and which affected Defendants' "substantial rights."  Johnson v. United States, 117 S. Ct. 1544, 1548-49 (1997).  Even then, we may reverse for the error only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. at 1549 (quotation marks and alteration omitted).  For Wohlfeiler's testimony to which Defendants objected, we review the district court's

---

[4] The pertinent part of the trial transcript reads this way:

> Q. Based on your knowledge and experience, Dr. Wohlfeiler, why would a physician treat a patient in this manner?
> A. Well, I've got to tell you, the only thing I can think of was for income generation.
> MR. RUBINO:  I'll object.  That's out of the scope of his knowledge.
> THE COURT:  Overruled.

5

decision for abuse of discretion.  We will set aside a conviction for an evidentiary error only if the error is not harmless; an abuse of discretion is not a reversible error if the error had no substantial influence on the outcome of the case.

The trial evidence of Defendants' guilt shows that the purported errors infringed no "substantial rights" of Defendants and had no substantial influence on the outcome of the case.  Several witnesses (other than Wohlfeiler) testified that the clinic existed for the purpose of billing Medicare for particularly expensive treatments (often not actually given to patients), that no clinic patients had the blood platelet disorder for which Medicare was billed, that blood tests were "doctored" to fake the disorder, that patients were brought into the clinic by a recruiter and were paid for their visits, and that the doctors decided which drugs to prescribe based on how much money they could get from Medicare.  According to the testimony at trial, Defendants knew that patients were brought to the clinic by a recruiter and that patients were paid; Defendants knew that they were billing for the maximum amount Medicare would allow; and Defendants' patients' charts obviously showed that blood test results and diagnoses were faked.  So, even if the trial court erred in admitting some of Wohlfeiler's testimony, the decisions Defendants appeal from were neither plain error nor harmful: no reversible error.

6

b.

Proano argues that his trial lawyer was ineffective because the lawyer had a conflict of interest: Proano says the lawyer represented one of the government's witnesses in an unrelated criminal case (Proano's lawyer did not represent the pertinent witness here for his testimony against Defendants). Proano brought the purported conflict of interest to the trial court's attention for the first time after Defendants were convicted, when Proano's new lawyer filed a motion to continue sentencing. Proano did not move for a new trial. The district court granted Proano's motion to continue sentencing and made no findings about the trial lawyer's conflict of interest.

Proano's ineffective assistance of counsel claim is not properly before the Court. We will consider an ineffective assistance of counsel claim on direct appeal if the district court record is sufficiently developed to do so. United States v. Camacho, 40 F.3d 349, 355 (11th Cir. 1994), overruled in part on other grounds by United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001). We do not reach Proano's conflict-of-interest-related ineffective assistance of counsel claim because the district court record is insufficiently developed for us to address the merits of Proano's argument. Id.; see also Massaro v. United States, 123 S. Ct. 1690, 1694

(2003) (in most cases it is preferable that a motion for ineffective assistance of counsel be raised on collateral review rather than on direct appeal).

c.

Proano also argues that the trial judge's instructions that Proano was not to talk to his lawyer about his trial testimony violated his Sixth Amendment right to counsel. Proano's testimony spanned three days: he gave direct testimony the first and second day and was cross-examined the second and third day. The trial judge allowed Proano to speak to his lawyer about Proano's testimony when the court recessed for the evening after Proano's first day of direct testimony.

The trial judge's instructions changed after Proano's second day of testimony. The court recessed that evening before the government had finished cross-examining Proano. The trial judge told Proano to talk to no person about his testimony. The prosecutor asked the judge to clarify the instruction to Proano "because you've been giving him a different instruction until now, that at this point includes his lawyer." The judge then specified that Proano could not talk that night to his lawyer about Proano's testimony. No objection was made.

8

Proano's cross-examination continued the next morning, which was the third day of Proano's testimony. That morning, before a brief recess, the judge instructed Proano not to "talk to anyone about [his] testimony." Proano's lawyer did not object. But Proano asked, "I can't even talk to my attorney?" and the judge answered, "No, you can't even talk with your attorney now, because it's just a short break." The court reconvened twenty-seven minutes later. Proano's cross-examination continued. Before the lunch recess later that day, the trial judge advised Proano not to talk to anyone about his testimony. No objection was made.

To preserve a deprivation of assistance of counsel claim when a district court prohibits a defendant from consulting with his attorney "a defendant or the defendant's counsel must indicate, on the record, a desire to confer." Crutchfield v. Wainwright, 803 F.2d 1103, 1109 (11th Cir. 1986) (en banc) (Hatchett, J., plurality opinion); id. at 1118-19 (Edmondson, J., specially concurring) (making a majority for the decision that there was no deprivation of a right to counsel because the trial record indicated no desire to confer).

The trial judge told Proano, at three separate times during Proano's cross-examination, not to discuss his testimony with his lawyer. Proano's lawyer did not object. The record reflects only one instance of Proano himself saying

9

anything about these prohibiting instructions: Proano's question of "I can't even talk to my attorney?"

Proano asked this question before a short break. Proano had no constitutional right to speak with his lawyer during that short break in the middle of Proano's being cross-examined. See Perry v. Leeke, 109 S. Ct. 594, 602 (1989) (testifying defendant has no constitutional right to consult with his lawyer "in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed."). So we need not decide whether Proano's one question sufficiently indicated his desire to confer with his lawyer to preserve some supposed Sixth Amendment claim for deprivation of assistance of counsel about the morning break.

For the other two instances in which the trial judge instructed Proano to speak to no person -- once specifically including Proano's lawyer -- about his testimony, Proano failed to preserve his deprivation of assistance of counsel claim: no part of the record indicates that Proano wished to speak with his lawyer at either of these times. The district court committed no plain error by just instructing Proano not to discuss his testimony with his lawyer.

Defendants have shown no reversible error; we affirm.

AFFIRMED.