REEVES TRUCKING, INC., Appellant,

v.

FARMERS MUTUAL HAIL
INSURANCE COMPANY
OF IOWA, Appellee.

No. 90-1881.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 8, 1991.

Decided Feb. 25, 1991.

Fletcher Long, Jr., Forrest City, Ark., for appellant.

Troy A. Price, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and SACHS,[*] District Judge.

SACHS, District Judge.

This is an appeal from the successful defense of a claim on a contract insuring a wheat crop from hail damage. The jury found material misrepresentations by Marlin Reeves in applying for insurance on behalf of the plaintiff corporation, a family farming enterprise purportedly owned by his wife. The jury also found, in a special verdict form, that there was damage to the wheat crop while the policy was in effect, but concluded that crop damage was only 5%, contrary to the loss claim of 100%.

Plaintiff contends that the trial court[1] erred in submitting the material misrepresentation issue when it failed to instruct the jury that the claim should be confined to a representation that the crop was undamaged at the time of the application. Under a general submission the court permitted the jury to consider the materiality of a representation that the insured crop covered 900 acres. In another transaction, Marlin Reeves had specified that only some 675 acres were planted in wheat. The rest of the acreage was purportedly planted in soybeans.

A second contention of error relates to the court's failure to declare a mistrial when defendant's counsel referred to the personal bankruptcy of Marlin Reeves during opening statement, and when Reeves was cross-examined regarding the bankruptcy.

For reasons developed below, we affirm.

■ Plaintiff corporation contends that if there was a misrepresentation as to the acreage planted in wheat such a misrepresentation was innocently made and in any event it was immaterial, because there was testimony that the insurer would only pay for acreage actually planted in wheat, as determined after a loss. There was insurer testimony, however, that 900 acres would not have been insured if the insurance company had known that only 675 acres had been planted in wheat. Tr. 461–2. On the record before us, this created an issue of fact to be resolved by the jury. There was no error in failing to take the issue from the jury.[2]

■ In defendant's opening statement counsel referred to the personal bankruptcy of Marlin Reeves, and stated that the proof would show that "Mr. Reeves was engaging in what I will call a shell game, where he would—if the Bankruptcy Court was looking, he would say, 'No, that is not mine, that belongs to Reeves Trucking, Inc., which is a corporation owned by my wife, and I own absolutely no interest in it ... But if the Bankruptcy Court or the creditors are not looking and there is an asset out there, he will tell the person that has the asset, 'No, that belongs to me. You pay me personally. Reeves Trucking has nothing to do with it.'" Tr. 46–7.

No objection was made to the opening statement; however, after the full statement was completed, counsel for plaintiff corporation sought a mistrial. There was lengthy discussion outside the hearing of the jury of the legitimacy of the bankruptcy issue, which defendant contended went

* The Honorable Howard F. Sachs, Chief Judge, United States District Court for the Western District of Missouri, sitting by designation.

1. The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

2. Other misrepresentation claims included failing to disclose a mortgage lien and failing to disclose alleged prior damage to the wheat crop shortly before making the application for hail insurance. These issues are not before us on appeal.

to both motivation and credibility. From the statements of counsel, not all of which were further developed in the evidence, it appears that there was a great deal of confusion in underlying records, with assertions at times that Marlin Reeves had an interest in the crop, the land and the hail damage claim and assertions at other times that the corporation was the sole party in interest. It seems to be acknowledged that Marlin Reeves made a proof of loss here in his own name, and he initially joined with the corporation as a plaintiff in litigation. There had been contentions in bankruptcy that the corporation was a fiction fabricated to evade creditors, and the bankruptcy court had purportedly endorsed that view. Marlin Reeves had been told by the bankruptcy court that he would not receive a discharge. Defendant also had information that Marlin Reeves personally had claimed disaster payment entitlement for the crop losses. This would apparently be an inconsistency of position independent of the bankruptcy problem.

The magistrate judge told counsel that he had previously reviewed some of the bankruptcy court records, and that the bankruptcy issue gave plaintiff's counsel "a lot of chain to ask you to swim with."[3] He denied a mistrial, saying that sufficient grounds had not yet appeared, but that they "may develop." For tactical reasons plaintiff did not ask for a cautionary jury instruction.

Marlin Reeves was cross-examined regarding conflicting claims and regarding his personal bankruptcy, although somewhat less probingly than had been discussed by counsel. Reeves was asked about conversations with Charles R. Pierce, executive director of the Dallas County ASCS office, which included a statement that he was not in personal bankruptcy, which he said he had tried, but that "it didn't go through." There was no reference to a denial of a discharge for misconduct. The inquiry by Pierce apparently related to whether Marlin Reeves was free to conduct his own affairs (or whether a corporation was the farm operator). Objections were made to portions of the cross-examination, and the court again denied a mistrial. Mr. Reeves testified that "I have a discharge right here in my files, if you want to get into it. I have been discharged. So, see, you are getting into things that don't pertain to this case." After objection from plaintiff's counsel that the bankruptcy issue was being pursued excessively, the court sustained the objection and stated, apparently in the jury's presence, "I do not think it is relevant whether or not Mr. Reeves, as we sit here today, has or has not availed himself of the bankruptcy laws at this time." Tr. 218. This implied criticism of defendant's line of inquiry may have been more negative than was warranted.

It is our view that the magistrate judge handled the bankruptcy issue appropriately, all in all, and that there was certainly no abuse of discretion. Plaintiff's principal witness, Marlin Reeves, was indeed carrying "a lot of chain" that had been forged by himself and possibly others with whom he dealt; that did create serious credibility issues. While defendant's counsel may have exploited the inconsistencies excessively, particularly in the "shell game" reference in the opening statement, there was no request to the court to caution or admonish counsel for such inflammatory language. The facts were ultimately developed appropriately to explain and answer the theory that Mr. Reeves was using the corporate structure only when it suited his advantage. His allegedly manipulative practices included matters that were at the center of this litigation.

█ There is no reason to believe the jury was unduly distracted from its main task, particularly after the judge made his final ruling.[4] Mistrials seriously impede

---

3. Contrary to plaintiff's contention, we do not read this as an acknowledgment that jurors tend to be biased against bankrupts as such, and we do not take judicial notice of such an alleged fact. In any event the alleged stigma of bankruptcy seems not to have been a voir dire subject.

4. Plaintiff contends that the jury's assessment of a 5% loss shows bias, because defendant's evidence acknowledges a 15% loss. The special

the judicial process. Denials of a mistrial are deemed to be an abuse of discretion only in extraordinary situations. *Underwood v. Colonial Penn Ins. Co.,* 888 F.2d 588, 590 (8th Cir.1989); *Sanitary Milk Producers v. Bergjans Farm Dairy, Inc.,* 368 F.2d 679, 683–84 (8th Cir.1966) (Blackmun, J.). We find no abuse of discretion in this case.

The judgment below is affirmed.

verdict form indicates that the jury considered the 15% loss. The 5% figure most likely is derived from a linkage of questions 2 and 3, and a determination that the loss before the policy was in effect accounted for the rest of the hail damage. The time period referred to in question 3 is ambiguous.