Johnny REYNOLDS, et al., Plaintiffs,

v.

**ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.**

Civil Action No. 85–T–665–N.

United States District Court, M.D. Alabama, Northern Division.

March 31, 1998.

Robert L. Wiggins, Jr., Ann K. Wiggins, Russell W. Adams, Abigail P. Van Alstyne, Kimberly C. Page, Scott Gilliland, and Kell A. Simon, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Johnny Reynolds, plaintiff, and Cecil Parker, Frank Reed, Ouida Maxwell, Martha Ann Boleware, Florence Belser, Peggy Vonsherie Allen, and Jeffrey W. Brown, intervenor-plaintiffs.

Claudia H. Pearson, Nakamura & Quinn, Birmingham, AL, for Robert Johnson, intervenor-plaintiff.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams, intervenors.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for Michael Grant, John D'Arville, and Andrew McCullough, intervenors.

Thomas R. Elliot, Jr., Allen R. Trippeer, Jr., Lisa W. Borden, C. Dennis Hughes, London & Yancey, Birmingham, AL, and William H. Pryor, Jr., Atty. Gen. for the State of Alabama, Montgomery, AL, for Alabama. Dept. of Transp., Alabama State Personnel Dept., Jimmy Butts, in his official capacity as Director for Alabama Dept. of Transp., Halycon Vance Ballard, in her official capacity as Director of the Alabama State Personnel Dept., and Fob James, in his official capacity as Governor of the state of AL, defendants.

William P. Gray, Jr., Gray & Jauregui, Montgomery, AL, for Fob James, in his official capacity as Governor of the State of Alabama, defendant.

Elaine R. Jones, Norman J. Chachkin, NAACP Legal Defense Fund, New York, NY, for NAACP Legal Defense and Educational Fund, Inc., amicus.

Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for The Lawyers' Committee for Civil Rights under Law, amicus.

## ORDER

MYRON H. THOMPSON, District Judge.

The issue presented in the midst of the lengthy nonjury trial of this long-standing lawsuit is one that, surprisingly, has been rarely addressed in the *civil* context: whether and, if so, when an attorney may confer with a witness during breaks in testimony. In their motion for mistrial, the defendants assert that the court has improperly prohibit-

ed their attorneys from conferring with witnesses during breaks in their testimony.[1] The defendants broadly contend that, "The law is clear that parties and witnesses have a right to representation by counsel, and that they may exercise that right by consulting with counsel at any time, including breaks in their trial testimony."[2] For the reasons that follow, the defendants' motion will be denied.

## I. BACKGROUND

The relevant events leading up to the defendants' motion for mistrial may be summarized as follows.

### A.

In this lawsuit, filed in May 1985, the plaintiffs charged that the defendants discriminated against them in employment because they are African–Americans, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983, and 42 U.S.C.A. § 1981. The plaintiffs represent a class of African–American merit and non-merit system employees and unsuccessful applicants. The defendants include the Alabama Department of Transportation, the Alabama State Personnel Department, and several state officials. The jurisdiction of the court has been invoked pursuant to 42 U.S.C.A. § 2000e–5(f)(3) and 28 U.S.C.A. § 1343.

After a partial trial in 1992, the parties reached a partial settlement, subsequently embodied in three consent decrees. One of the consent decrees, commonly referred to as 'consent decree I,' was approved by the court on March 16, 1994.[3] Consent decree I addressed all class-wide issues, but left individual claims unresolved.[4]

### B.

Following the entry of consent decree I, the court conducted a number of proceedings on matters related to the decree. A recurring issue in these proceedings has been whether and, if so, when an attorney may confer with a witness during breaks in his or her testimony. The court established a rule which, as it evolved over time, is essentially as follows: As a general proposition, attorneys cannot talk to witnesses during breaks in testimony. The rule has, however, been subject to several exceptions. First, a witness who is to testify on different occasions on different topics is subject to the rule only while testifying on one topic. Second, upon request to the court, attorneys have been allowed to consult with witnesses about non-testimonial matters during brief recesses and extended recesses over evenings and weekends. Third, the court would consider requests to consult with witnesses about even their testimony. And fourth, if an attorney disagreed with the rule, the attorney need only present the court with statutory or case law to support his or her position, and the court will reconsider the rule. The history behind the evolution and application of the rule is as follows.

In late April 1997, the court conducted a hearing on the plaintiffs' charge that the Transportation Department intended to process employee administrative grievances in a manner that violated consent decree I.[5] On

---

1. Defendants' motion for mistrial, filed January 12, 1998 (Doc. no. 2390).

2. *Id.* at 2.

3. *See Reynolds v. Alabama Dep't of Transp.*, 1994 WL 899259 (M.D.Ala. March 16, 1994) (Doc. no. 553). The other two proposed consent decrees are currently under consideration by the court.

4. Article XX of consent decree I provided that the court is to hear and decide those individual claims not resolved by settlement negotiations between the parties. Paragraph one of article XX states:

"Further negotiations and proceedings are required to resolve the claims for monetary and non-monetary remedies for individual members of the class (including the named plaintiffs and intervenors), provided however, that this Decree does not in and of itself entitled any such class member to such remedies. Such claims shall be resolved first by settlement negotiations and then, to the extent not resolved by settlement negotiations, by the Court."

5. *See* plaintiffs' motions for preliminary injunctions, filed March 10, 1997 (Doc. no. 1635) (treated as a motion for permanent injunction pursuant to order entered March 11, 1997 (Doc.

April 24, during the third day of the hearing, the plaintiffs' counsel complained that the defendants' counsel had talked to one of the defendants' witnesses about his testimony during a break in his testimony.[6] The court reprimanded the defendants' counsel for this action, and set forth a *prospective* rule that, unless prior court approval has been obtained, an attorney was not to speak with any witness during any breaks in that witness's testimony.[7] The court indicated that any preparation of witnesses was to take place before they took the stand, and once witnesses were on the stand, the court wanted no interference with them, so as to increase the likelihood that the witnesses will confine themselves to their own recollections.[8] The court acknowledged that there might be an exception for an attorney's 'client' but that it was unnecessary to address whether there was such an exception because the witness was not a client of the defendants. The exchange in open court was, in part, as follows:

> "[DEFENDANTS' COUNSEL]: Well, to begin with, I understood that any client had the right to consult with his attorney.
>
> "THE COURT: That's what I said. The only exception is a client. And I put 'maybe' a client there, too. That may be only in the area of criminal law.
>
> "[DEFENDANTS' COUNSEL]: But even to determine without coaching, or do you have knowledge in this area, and to facilitate your examination you don't ask him—
>
> "THE COURT: Well, you can do that during—with the approval of the court, or before the witness takes the stand. But once that witness takes the stand you couldn't any more do that than you could interrupt his conversation while [plaintiffs' counsel] is talking to him right now and go up and ask him questions and try to talk to him. He's still subject to examination.

Now let's continue. But I'll make that rule prospective, because I can see where maybe it shouldn't happen. But I don't mean for people to talk to witnesses during breaks. And that applies across the board to [plaintiffs' counsel], too." [9]

A few months later, the issue surfaced again. On September 15, 1997, as provided in article XX of consent decree I, the court commenced trial proceedings to resolve individual claims for injunctive relief. The proceedings were expected to last for a number of months, with scores of witnesses, and thousands of exhibits to be submitted to the court, and, indeed, the proceedings have continued, with limited interruption, through March 1998. On September 17, the third day of trial, plaintiffs' counsel again charged that the defendants' counsel had talked to a witness about his testimony during a break in his testimony.[10] The following colloquy between the plaintiffs' counsel and the defendants' third witness ensued:

> "[PLAINTIFFS' COUNSEL]: [B]y the way, I wanted to ask you this before we go into that: Did you discuss this Dean situation with [defendants' counsel] during the break?
>
> "[THE WITNESS]: What aspect of it?
>
> "[PLAINTIFFS' COUNSEL]: Did you discuss the Dean appointment and the reasons for the appointment and the different things that came out about Dean versus Harris when Watlington retired with [defendants' counsel] during the break?
>
> "[THE WITNESS]: Yes, sir. There was a little bit of discussion there.
>
> "THE COURT: Pardon me? There was discussion?
>
> "THE WITNESS: Yes.
>
> "THE COURT: Or was there not? Why are you hesitating?
>
> "THE WITNESS: Yes, sir, there was.

---

no. 1643)), and March 28, 1997 (Doc. no. 1716) (treated as motion for permanent injunction pursuant to order entered March 31, 1997 (Doc. no. 1726)).

**6.** *See* transcript of third day of supplemental hearing on plaintiffs' motion for permanent injunction, held April 24, 1997, at 478–81.

**7.** *Id.* at 480–81.

**8.** *Id.* at 479, 480–81.

**9.** *Id.* 480–81.

**10.** *See* transcript of third day of non-jury trial, held September 17, 1997, at 78–82.

"THE COURT: Okay. Go ahead.

"[PLAINTIFFS' COUNSEL]: And [defendants' counsel] went over the facts with you about the Dean appointment instead of Mr. Harris during the break?

"[DEFENDANTS' COUNSEL]: I would object.

"THE WITNESS: No, he did not do that."[11]

The court then reminded the parties that this same issue had arisen in a prior proceeding, and, at that time, the court set forth a prospective rule prohibiting any attorney from talking with any witness about his testimony during breaks in the witness's testimony. A discussion of the court's rule followed:

"THE COURT: Let me say this: This came up at an earlier proceeding, and Ms. Borden was here at the time, and I believe you were here as well....

"[DEFENDANTS' COUNSEL]: That's correct.

"THE COURT: I set forth a prospective rule. I believe there was some question about either Ms. Borden or you talking to the witnesses during the break. And I said, well, I won't apply it to this instance, but I want to make sure it's applied in the future. And I'll find out what that rule is, and I'm going to apply it.

"[DEFENDANTS' COUNSEL]: If it please the Court, this gentleman is my client. He is a representative of the Alabama Department of Transportation. I have a right—I understand the ruling, I understand the law—

"THE COURT: Well, let me see what my rule is, but I don't think you can necessarily talk to even your client during—while the client is on the stand. And the client is considered on the stand even during the break.

"[DEFENDANTS' COUNSEL]: If it please the Court, I have been to grand juries where witnesses would come out and get advice from Counsel. I have been—

"THE COURT: Well, a grand jury is a totally different matter.

"[DEFENDANTS' COUNSEL]: Been to every type of procedure known to man, but—

"THE COURT: But you can't talk to your client any more than you can walk up here and talk to him before he gives an answer. As long as he is under the examination of the Court and so forth—we went through this once.

And let's find it. During the next recess we're going to find it, because we went through this. And it was a Transportation Department person, and I thought we covered this. And I set out the rule then. But once a witness is on the stand, you can't tamper with that witness.

"[DEFENDANTS' COUNSEL]: We're not talking about tampering. I have the right to discuss it—

"THE COURT: Tampering in the sense of talking to the witness, because it can be perceived as tampering. You can't do that any more than you can interrupt their testimony right now in the middle of [plaintiffs' counsel's] question, or technically you could ask for a recess before he answers a question; and talk to him.

We're not in a grand jury proceeding. Once that witness takes the stand, nobody is supposed to talk to him, so as to color his testimony. Otherwise, what's the purpose of having prohibitions against leading questions? Why can't you stop him at any moment and ask for a recess?

"[DEFENDANTS' COUNSEL]: At any point in the process a lawyer has a right to say to his client, do you have any knowledge about this, do you have any knowledge about that."[12]

Finally, the court reaffirmed its rule, and instructed the parties that, if they disagreed with it, to come forward with some law indicating that the court's ruling was incorrect so that the court could remedy any errors. The court cautioned the attorneys that it did not want them "shooting from the hip." Part of the exchange in court was as follows:

"THE COURT: Well, I set up a rule, and we'll go back and find it. But the rule was

**11.** *Id.* at 78–89.

**12.** *Id.* at 79–81.

meant to apply, it applies to even your own client, because you cannot talk to that client while that client is on the stand. And there is established law on that....

"[PLAINTIFFS' COUNSEL]: [Defendants' counsel] made the same argument last time.

"THE COURT: Well, we'll find it in the record. Why don't you all find it. But there is established law; read it. Don't shoot from the hip.

I don't care what other—I always have people coming over here and saying, well, I do this in State Court, or I do that in Federal Court. I do what the law says. I've looked that up before. I've ruled on that once before. If you want to show me that I was wrong in my ruling, you show me the law on it...." [13]

The issue surfaced again the next day, September 18.[14] The defendants' counsel informed the court that he had been unable to find any case law "concerning the lawyers' contact and discussion with witnesses," and that if he found "something otherwise," he would let the court know. The exchange with the court was, in part, as follows:

"[DEFENDANTS' COUNSEL]: You had asked that we furnish you with authorities concerning the lawyers' contact and discussions with witnesses.

"THE COURT: Yes. You want to go ahead and put that to rest? Let's see who is right, so let's look at the law, which always is right.

"[DEFENDANTS' COUNSEL]: My office couldn't find any controlling order either way.

"THE COURT: Okay.

"[DEFENDANTS' COUNSEL]: So, I will understand Your Honor's instructions, and if I find something otherwise I'll let you know." [15]

During that same exchange, the court also clarified that it recognized that some witnesses would testify several times on different topics and that counsel were not barred

from talking to them during the periods between the instances when they would be called back on different topics. The court explained: "The functional purpose of what I said is just that while a witness is on the stand, no one should talk to that witness about the subject matter he's talking about. But we made an exclusion yesterday that some of the witnesses would be coming back several times, and I have no problems with you talking to them. But while they're on the stand during recesses or whatever, no one is to go up and say anything to them. And that applies to both sides." [16]

The court further clarified, at the request of defendants, that, if "during the course of a witness's testimony, ... [an attorney] might want to consult" with the witness, the attorney should bring the matter to the court's attention and the court would consider it on a case-by-case basis. Part of the exchange with the court was as follows:

"[DEFENDANTS' COUNSEL]: I want to—I understand the instructions and will conform to them.

I want to make one other point that might be applicable here. During the course of the examination of my witnesses by [plaintiffs' counsel], cross examination by him, there have been questions concerning violations of *Frazer*, concerning violation of the Consent Decree, concerning violations of injunctions. Those things that may even involve some type of penalties, criminal or whatever.

"THE COURT: Mm-hmm.

"[DEFENDANTS' COUNSEL]: And I would submit to the Court that during the course of a witness's testimony, that they might want to consult about those type matters.

"THE COURT: Even if it's criminal?

"[DEFENDANTS' COUNSEL]: Well, I don't know if it's criminal, but they're certainly subject to the contempt power of this case.

---

**13.** *Id.* at 81–82.

**14.** *See* transcript of fourth day of non-jury trial, held September 18, 1997, at 3–4.

**15.** *Id.* at 3.

**16.** *Id.* at 3–4.

"THE COURT: Well, I will issue a show cause order if I'm going to put anybody in jail.

"[DEFENDANTS' COUNSEL]: Well, my reason for saying that is there is a certain type of testimony that may be elicited from those witnesses that might require them to seek advice during the course of their examination. I don't know that that will be the case—

"THE COURT: Well, bring that to my attention. That's the way to take that up.

"[DEFENDANTS' COUNSEL]: Yes, sir." [17]

On the fifth day of trial, September 19, the Court further made clear that, upon request, it was willing to allow counsel to talk to witnesses about non-testimonial matters when their testimony extended over the evening or over a weekend. The exchange in court was, in part, as follows:

" THE COURT: Okay. We will reconvene, then, on Monday morning at 9:00 o'clock.

"[DEFENDANTS' COUNSEL]: May I have an opportunity over the weekend, if I choose, to communicate with [the witness] concerning some of the documentation?

"THE COURT: Yes, you may communicate with him concerning some documentation. Is he still on the stand?

"[DEFENDANTS COUNSEL]: Yes, sir. I haven't finished.

"THE COURT: Okay. Very good. Thank you. Court's in recess until 9:00 o'clock." [18]

On the 29th day of trial, the issue arose again and, in an accommodation to counsel, the court allowed counsel to speak with the witness about his testimony during his testimony. The exchange in court was, in part, as follows:

"THE WITNESS: Your Honor, can I speak to you just a minute?

"THE COURT: Yes

"THE WITNESS: We have a program Statewide that we've been instructed involves disciplinary actions and things that we've been told this is confidential. I don't know how that affects the Court.

"THE COURT: Well, if something is confidential you should let your lawyers know, and then let them make the determination as to whether something should be taken out or not.

"THE WITNESS: I wasn't even sure I was supposed to tell them, to be honest with you.

"THE COURT: Do you have the information that's confidential with you?

"THE WITNESS: No, sir.

"THE COURT: What we can do is if it's confidential, we can take action and make sure that someone is not unfairly—some information about someone is not unfairly revealed. I'll let you get with your lawyers and [plaintiffs' counsel] and you all can work that out. . .

"[DEFENDANTS' COUNSEL]: We have not had any discussions with the witness about this because—

"THE COURT: He just told me he had not discussed it with you. But I'm saying after, during a break or some other time you all can get together and work this out about the information that's so-called confidential and see if it's relevant. If it's not even relevant there is no sense of even bringing it down here.

Let's move on.

"[PLAINTIFFS' COUNSEL]: From the plaintiffs' standpoint, though, we would ask that these files, until the determination is made and they're complete, not be received in evidence. Because if we go ahead and receive them subject to that determination and the Department fails to make it, then the problem falls on the plaintiff. It ought to fall on the Department, who has control of the documents.

"THE COURT: [Defendants' counsel]?

"[DEFENDANTS' COUNSEL]: We will request that the complete files be furnished. May I ask him a question?

"THE COURT: Go ahead.

---

**17.** *Id.* at 4–5.

**18.** Transcript of fifth day of nonjury trial, held September 19, 1997, at 132–33.

"[DEFENDANTS' COUNSEL]: Did you keep the stuff that was left out in a pile or stack or something where you could just—

"THE WITNESS: It's stacked separate from everything else.

"[DEFENDANTS' COUNSEL]: So you could just pick that up and bring it here and we could bring it in the right file?

"THE WITNESS: Yes, sir.

"[DEFENDANTS' COUNSEL]: We'll have him do that.

"THE COURT: Very good. Take those back and then you all get together and make them complete as you all think it should be complete and let me know about any disputes.

"[DEFENDANTS' COUNSEL]: This may be a problem that could have been avoided. We have instructed the witnesses as you have instructed us, that we're not to talk with them during the course of their testimony. And so, I take it that's why he didn't bring this to our attention.

"THE COURT: Okay. Well, let's move on, then." [19]

### C.

Although instructed by the court to come forward with some law if they disagreed with the court's ruling, the defendants waited until January 12, 1998, to file their motion for mistrial with supporting legal argument, contending that "parties and witnesses have a right to representation by counsel, and that they may exercise that right by consulting with counsel *at any time*, including breaks in their trial testimony." [20] This was 38 trial days, and almost four calendar months, after the issue addressed in the motion arose in the current trial, and the same length of time after the court expressly invited the defendants to bring forth any relevant law on the issue.[21] The motion also came after approximately 70 witnesses testified in the on-going trial under the rule the defendants were challenging.

---

19. Transcript of 29th day of nonjury trial, held October 27, 1997, at 117–119.

20. Defendants' motion for mistrial, filed January 12, 1998 (Doc. no. 2390), at 2 (emphasis added).

## II. DISCUSSION

The court assumes that, with their motion for mistrial, the defendants are seeking a new nonjury trial. Although the Federal Rules of Civil Procedure, surprisingly, do not address whether and, if so, when mistrials are appropriate, case law indicates that a court has "particularly broad discretion in determining whether an incident, in the context of an entire trial, is so serious to warrant a mistrial." *Testa v. Village of Mundelein,* 89 F.3d 443, 445 (7th Cir.1996) see also *Dempsey v. Mac Towing, Inc.,* 876 F.2d 1538, 1541 (11th Cir.1989). "Mistrials seriously impede the judicial process," *Reeves Trucking, Inc. v. Farmers Mut. Hail Ins. Co.,* 926 F.2d 749, 751–52 (8th Cir.1991), and therefore are to be declared sparingly, and only when truly warranted. A mistrial is not warranted in this case for three reasons.

### A.

First, the defendants were impermissibly late in bringing to the court's attention the matter about which they complain. Thirty-eight trial days, and almost four calendar months, before the defendants' filed their motion, the court specifically instructed them not "to shoot from the hip" and, instead, to come forward with any law indicating that the court's ruling was incorrect so that the court could remedy any errors in its ruling. The defendants did not do so. Instead, they allowed a substantial period of time to pass, and over 70 witnesses to testify under the court's standing rule, before taking any action. Their acquiescing to the court's rule, then waiting so long, works a waiver of their right to turn a current challenge to the rule into a remedy for any wrongs they have allowed to accrue while they were sleeping on their watch. Moreover, the defendants have not even offered any explanation of why they were so late in bringing this issue to the court's attention. With no mention of any reason for their delay, the defendants' suggestion that the court should scuttle the cur-

---

21. The defendants also concede that this motion came eight-and-one-half months after the issues it addressed originally arose in April 1997. *See id.* at 1 n. 1.

rent trial is unconscionable, particularly in light of the amount of time that has passed, the number of witnesses who have testified, the number of exhibits that have been presented, and the millions of dollars that have been expended in attorney time and court time.

### B.

Second, mistrials are typically declared in the context of a jury trial, and only when prejudice results for one party that is so serious that it cannot be adequately cured by the court without resort to a new jury. Although, based on the notion that one should 'never say never,' the court is reluctant to make the absolute statement that a mistrial is never appropriate in a nonjury or bench trial, the court is comfortable in saying that the circumstances that would warrant such would be extremely rare. In a nonjury trial, such as this one, all that need be done, typically, to correct an error would be for the court simply to disregard any inappropriate evidence and, if necessary, allow the parties to supplement the record with appropriate evidence. Therefore, even if the underlying contention in the defendants' motion were true, it would not warrant scuttling the current trial and starting anew.

### C.

■ Finally, the substantive contention that underlies the defendants' mistrial motion—that the court has improperly prohibited their attorneys from consulting with witnesses about any matter at any time during breaks in their testimony—is meritless.[22] In support of this contention, the defendants rely primarily on two cases: *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir.1980), and *Geders v. United States*, 425

U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In *Potashnick*, the former Fifth Circuit Court of Appeals confronted the issue of whether a civil litigant has a due-process right to counsel.[23] In concluding that a civil litigant does, the court issued the following broad comment: "[T]he right to counsel is one of constitutional dimensions and should be freely exercised without impingement." 609 F.2d at 1118. The court explained that "the right to retain counsel in civil litigation is implicit in the concept of fifth amendment due process.... The right develops out of the principle that notice and hearing are preliminary steps essential to the passing of an enforceable judgment and that they constitute basic elements of the constitutional requirement of due process of law." *Id.* at 1117–18. The *Potashnick* court concluded that, " 'If in any case, *civil or criminal*, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.' " *Id.* at 1118 (emphasis in original) (quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)).

In making these comments, the *Potashnick* court drew support from *Geders v. United States*, the second case relied upon by the defendants here. In *Geders*, the Supreme Court held that a trial court had improperly prevented a defendant in a criminal case from consulting with his attorney during an overnight recess. The *Potashnick* court first acknowledged that *Geders* was a criminal case, not a civil case, and that, as a result, "certain distinctions can be made between the rights of civil litigants and those of

---

**22.** The defendants frame the issue as though it is their witnesses who have a broad, and unlimited, right to consult with defendants' counsel for advice, including advice on the substance of their testimony while the testimony is on-going. The court has re-framed the issue because, from the circumstances in which this issue arose, the court takes the thrust of what the defendants are after to be the opportunity for the defendants' counsel to consult with their witnesses, and not really the witnesses seeking to consult with the defendants' counsel. Regardless, for the present purposes, the court will assume that to the extent

that a witness has a right to consult with counsel, counsel also has a right to consult with the witness. That is, counsel may serve as a surrogate in asserting any rights a witness may have.

**23.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

criminal defendants," *id.*, such as that "a criminal defendant's right to counsel arises out of the sixth amendment, and includes the right to appointed counsel when necessary," *id.*, and a "criminal defendant faced with a potential loss of his ·personal liberty has much more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection · to the criminal defendant's rights." *Id.* The *Potashnick* court nevertheless concluded that "an analogy can [still] be drawn between the criminal and civil litigants' respective rights to counsel." *Id.* "In both cases," according to the court, "the litigant usually lacks the skill and knowledge to adequately prepare his case, and he requires the guiding hand of counsel at every step in the proceedings against him." *Id.*

After concluding that a civil litigant has a due-process right to counsel, the *Potashnick* court then confronted the critical issue ˙of whether a trial court's rule prohibiting a litigant from consulting with his attorney during breaks and recesses in the litigant's testimony impinges on that right. In concluding that such a rule would, the *Potashnick* court turned again to *Geders.* There, the Supreme Court wrote: "It is common practice during such (overnight) recesses for an accused and counsel to discuss the events of the day's trial" because "[s]uch recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed." *Geders,* 425 U.S. at 88, 96 S.Ct. at 1335. "The lawyer," the Court continued, "may need to obtain from his· client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events." *Id.* The *Geders* Court concluded ˙that, "the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Id.* Relying on these comments, the *Potashnick* court then observed that "The need for attorney-client communication is certainly no less in a civil case." 609 F.2d at 1119.

Here, the defendants' reliance on *Potashnick* and *Geders* is misplaced. In *Potashnick,* the trial court prohibited an attorney from having any contact with a witness during breaks in testimony. The key to the deprivation in *Potashnick* was that the witness was the president and sole shareholder of the company being sued, and was intimately involved in the defense of the case. He needed to have contact with defendant's counsel for advice and to give information for the defense of the case, and by the court's prohibiting this witness ˙from talking with defendant's counsel during the entire period of his testimony—seven days—the court was effectively depriving the defendant corporation of any representation at all. Similarly, in *Geders,* the trial court had denied ˙a criminal defendant access to this attorney ˙for 17 consecutive hours. Here, in contrast to the circumstances presented in *Potashnick* and *Geders,*˙ it was not ˙self-evident which witnesses, if any, called by the defendants occupied positions comparable to that of the company ˙president in *Potashnick* or the criminal defendant in *Geders.* Instead, here the defendants would have to notify the court, beforehand, of when a witness fell into this category. They did not, however, and the defendants' broad and belated˙ contention that all their witnesses qualified ˙amounts to no notice to the court at all. Moreover, unlike in *Potashnick* and *Geders,* ˙the rule imposed by the court was flexible in application. The court, upon request from, defendants' counsel, allowed them to consult with *any* witness, without a determination by the court that the witness fell within the definition of a party, about non-testimonial matters ˙during both brief and˙ extended recesses. The underlying premise for an exception was some reasonable assurance from counsel that they needed to talk to the witness about non-testimonial matters. Indeed, defendants' counsel exercised this right on occasion, and the court cannot˙ remember ever refusing a party's request to talk to a witness about non-testimonial matters during a recess.

But most importantly, when they filed their mistrial motion, the defendants completely failed to mention *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), a later Supreme Court case that sub-

stantially clarified, and limited, the broad statements in *Potashnick* and *Geders* of a litigant-witness's right of access to counsel during breaks in testimony.[24] *Perry* answers the question that was expressly reserved in *Geders*, namely whether the court could restrict a criminal defendant from speaking with his counsel "during a brief routine recess during the trial day." *Perry*, 488 U.S. at 280, 109 S.Ct. at 600. The *Perry* Court concluded that the trial court could. The Court began its analysis with two broad principles. The first is that "when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying." *Id.* at 281, 109 S.Ct. at 600. "He has an absolute right to such consultation before he begins to testify," the Court continues, "but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice." *Id.*

The second principle is derived from the general right of trial courts to sequester witnesses. The *Perry* Court explained that, "It is a common practice for a judge to instruct a witness not to discuss his or her testimony with third parties until the trial is completed. Such nondiscussion orders are a corollary of the broader rule that witnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections." *Id.* at 281–82, 109 S.Ct. at 600. Although the "defendant's constitutional right to confront the witnesses against him immunizes him from such physical sequestration," *id.* at 282, 109 S.Ct. at 600, "the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well" when he assumes the role of a witness. *Id.* at 282, 109 S.Ct. at 601. The Court then concluded that "it is entirely appropriate for a trial judge to decide, after listening to the direct examination of any witness, whether the defendant or a nondefendant, that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer." *Id.*

From these broad principles, the *Perry* Court then held that "just as a trial judge has the unquestioned power to refuse to declare a recess at the close of direct testimony—or at any other point in the examination of a witness—... the judge must also have the power to maintain the status quo during a brief recess." *Id.* at 283, 109 S.Ct. at 601. "[I]n a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendant does not have a constitutional right to advice." *Id.* at 284, 109 S.Ct. at 602. The Court explained: "[T]he truth-seeking function of the trial can be impeded in ways other than unethical 'coaching.' Cross-examination often depends for its effectiveness on the ability of counsel to punch holes in a witness' testimony at just the right time, in just the right way. Permitting a witness, including a criminal defendant, to consult with counsel after direct examination but before cross-examination grants the witness an opportunity to regroup and regain a poise and sense of strategy that the unaided witness would not possess. This is true even if we assume no deceit on the part of the witness; it is simply an empirical predicate of our system of adversary rather than inquisitorial justice that cross-examination of a witness who is uncounseled between direct examination and cross-examination is more likely to lead to the discovery of truth than is cross-examination of a witness who is given time to pause

---

**24.** It was only after the court pointed the defendants to *Perry* that they submitted some argument concerning it.

Moreover, overlooking *Perry* was not the only lapse in the defendants' legal research and argument on this matter. In their motion for mistrial, filed January 12, 1998 (Doc. no. 2390), the defendants cited the court to two cases, *United States v. Conway*, 632 F.2d 641 (5th Cir.1980), and *United States v. Romano*, 736 F.2d 1432 (11th Cir.1984). The *Romano* decision was vacated by the Eleventh Circuit, both cases were overruled by the Eleventh circuit on other, but related, grounds, in *Crutchfield v. Wainwright*, 803 F.2d 1103 (11th Cir.1986), and both cases were called into doubt, for exactly the propositions at issue here, in *Perry*. The defendants made no mention of the subsequent history of these cases.

and consult with his attorney." *Id.* at 282, 109 S.Ct. at 601. But " '[o]nce the defendant places himself at the very heart of the trial process, it only comports with basic fairness that the story presented on direct is measured for its accuracy and completeness by uninfluenced testimony on cross-examination.' " *Id.* at 283, 109 S.Ct. at 601 (quoting *United States v. DiLapi,* 651 F.2d 140, 151 (2d Cir.1981) (Mishler, J., concurring), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 1428, 71 L.Ed.2d 648 (1982)).

After reaching its conclusion, the *Perry* Court then went on clarify the nature of the issue in *Geders,* where the Court held that it was impermissible for the court to interfere with the defendant's contact with his counsel. The *Perry* court stated that "It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess.... The fact that such discussion will inevitably include some consideration of the defendant's ongoing testimony does not compromise that basic right. But in a short recess in which it is appropriate to presume that nothing but the testimony will be discussed, the testifying defendants does not have a constitutional right to advice." *Id.* at 284, 109 S.Ct. at 602. And it is only when a court's order sequestering a witness keeps him from getting the advice of his counsel on such things as the availability of other witnesses, trial tactics, or the possibility of negotiating a plea bargain—not on the substance of the witness's testimony—that there is an infringement of the sixth amendment. *See id.*

▮▮▮▮ Considering the development of the cases in the criminal context and analogizing this development to the civil context, the court concludes that the scope of a civil party's right to access to his counsel, and thus the scope of the counsel's right to access to a civil party, is clear. A civil party does not have a right to consult with his counsel at any time about any matter during the course of his or her testimony. Rather, the trial court has broad power to control the progress of testimony before it. This broad power is, however, limited by a testifying party's right to engage in such non-testimonial mat-

ters as giving and receiving information and working on the presentation of his or her case through strategizing, developing tactics, and generally managing the progress of the case. Because these non-testimonial matters arise most often during extended recesses— in particular, over evenings and weekends— the court must be sensitive to allow a testifying party to confer with his or her attorney during such periods. Here, the defendants sought an unqualified right to consult with *all their witnesses* at *any time* about *any matter,* both testimonial and non-testimonial, and the law does not support such.

Moreover, as stated, it was not self-evident which witnesses, if any, called by the defendants occupied positions comparable to that of the company president in *Potashnick* or the criminal defendant in *Geders,* or positions in which they would be called upon to give advice to counsel about trial proceedings. Instead, here the defendants would have to notify the court, beforehand, of when a witness fell into this category. They did not, and, as further stated, their broad and belated contention that all their witnesses qualified amounts to no notice to the court at all. In addition, the defendants have not identified an instance where the court has not allowed them to discuss non-testimonial matters with a witness. Indeed, the record reflects that, when asked, the court has allowed defendants' counsel to confer with witnesses (without even a determination that the witnesses occupied party status) about non-testimonial matters.

### D.

Finally, the holdings in *Perry, Geders,* and *Potashnick* are premised on the fact that the testifying witness is a litigant, that is, a party to the proceedings. Only a party to a civil proceeding would have a fifth amendment right to consult with his or her attorney during breaks and recesses about non-testimonial matters. The defendants respond that, under *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), *all employees of the Transportation and Personnel Department are representatives of these departments and*

*are thus parties for purposes of these case.*[25] To the extent *Upjohn* arguably applies here, the defendants' argument is meritless for several reasons. First, the *Upjohn* Court was careful to note that it was holding that the 'attorney-client' privilege prohibited only the communications involved in the case before it, and that it was not laying "down a broad rule or series of rules to govern all conceivable future questions in this area." 449 U.S. at 386, 101 S.Ct. at 681. Rather, the Court cited with approval the following language: " 'the recognition of a privilege based on a confidential relationship ... should be determined on a case-by-case basis.' " *Id.* at 396, 101 S.Ct. at 686 (quoting S.Rep. No. 93–1277, at 13 (1974), 1974 U.S. Code Cong. & Admin. News 7051). Second, if the defendants here seriously contend that *all* employees called by them (including those in the lowest and menial positions) are each and everyone representatives of either the Transportation or Personnel Departments, then it would follow that statements made by all of them could conceivably be viewed as binding on these defendants in this litigation, *see* Fed.R.Evid. 801(d)(2) (admission of party opponent), a position which the defendants have disavowed strongly. Surely, the defendants have not thought this argument through. Second, it is apparent from *Potashnick* that the right at issue applies to a witness who has the authority to act for the company (or, in this case, the governmental department), and thus would be involved in non-testimonial matters, such as making tactical decisions and reviewing trial strategies. The *Potashnick* court wrote that the witness was a "president and sole shareholder" of the defendant and thus was "required ... to act for the corporation in the attorney-client relationship." 609 F.2d at 1119. The circumstances here for all of the defendants' witnesses are not the same as those in *Potashnick.*

Finally, by arguing that they are entitled to confer with all employee witnesses, the defendants have overreached to the extent that their argument is self-defeating. Their blunderbuss request reveals that the real thrust of their argument is that the court should have no authority at all to restrict their access to witnesses during breaks; they simply want to talk to *all their witnesses* without limitation during *all recesses* about *all matters.* In *Perry,* however, the Supreme Court rejected this argument and made clear that a trial judge had "the power to maintain the status quo," 488 U.S. at 283, 109 S.Ct. at 601, during a witness's testimony, subject to the right of a litigant to confer with counsel about trial strategy and other non-testimonial matters during extended recesses. Although the defendants have indicated that each of their witnesses is covered by the attorney-client privilege, they have not identified those with whom their counsel needed to consult for any reason other than to talk about the substance of the witnesses' testimony.

In conclusion, the court will continue with its general policy of prohibiting attorneys from talking to witnesses during breaks and testimony. However, because this policy is general, it is subject to a number of exceptions, including the following: First, a witness who testifies on different occasions on different topics is only subject to the rule while testifying on one topic. Second, upon a request made to the court, attorneys will be allowed to consult with witnesses about non-testimonial matters during evenings and weekends. Third, the court will consider requests to consult with witnesses about even their testimony if the request warrants such. The court recognizes it could restrict these exceptions to instances where the witness is a party or a representative of a party, with the court to make such a determination on a case-by-case basis with each request from the defendants. The court has not imposed such a restriction in the past, and sees no reason to begin such in this lengthy trial. The purpose of the rule is to make sure that a witness's testimony, once begun, is undisturbed. The purpose will not be impinged by acquiescence to a good-faith request that a witness is needed for a non-testimonial mat-

---

25. *See* Defendants' motion for mistrial, filed January 12, 1998 (Doc. no. 2390) ("The right to consult with defendants' counsel in this case extends to all of the employee witnesses who have testified at trial.").

ter.[26] Moreover, the length of time it would take in this already lengthy litigation to determine on a case-by-case basis whether a witness is in fact a representative of a defendant would outweigh any advantage that would result from such a determination.

For the foregoing reasons, it is ORDERED that the defendants' motion for mistrial, filed on January 12, 1998 (Doc. no. 2390), is denied.

**26.** This is beside the fact that the court carved out a liberal exception to the sequestration rule pursuant Rule 615 of the Federal Rules of Evidence, which provides:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause."

In light of the magnitude of the litigation underway in this court, the court has had a standing rule that the defendants could designate virtually any of their employees to assist their counsel during the trial and that they could change this designated person as the issues in the trial changed.