[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11052

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANDRES GARCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00136-CEM-DCI-1

_____

Before ROSENBAUM, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Andres Garcia appeals from his convictions and sentences for coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). First, Garcia argues that his Sixth Amendment rights were violated because he did not have an opportunity to confront and cross-examine the victim. Next, he argues that the district court erred in denying his motions for judgment of acquittal because the government failed to prove its case beyond a reasonable doubt. Third, he argues that his Sixth Amendment right to counsel was violated when the district court refused to allow him to speak to his attorney during a brief recess and prior to being cross-examined by the government. Finally, he argues that the district court committed plain error by including his receipt of child pornography convictions on his written judgment, when his post-trial guilty plea did not include those counts, and by improperly calculating his Guidelines range. After careful review, we affirm.

## I.

On February 22, 2022, Christine Holmes—a disability support worker in Perth, Australia who works with juveniles in government care—was assigned to work with T.M., a then-thirteen-year-old female living in government housing. That night, Holmes observed T.M. sitting on her bed and taking a phone call. After

24-11052                Opinion of the Court                3

T.M. closed the door, Holmes continued to listen in on the conversation T.M. was having with a "male person with an accent" on speakerphone. According to Holmes, the male on the other end mentioned having children and a wife. The next day, Holmes again overheard T.M. and the man speaking. This time, "[i]t was discussed that [T.M.'s] birthday was the following day," and that "she was turning 14." Holmes heard the male ask T.M. to take her shirt off. Concerned, Holmes entered T.M.'s room and immediately observed T.M. naked from the navel up, attempting to cover herself with a sheet. Holmes also observed that T.M.'s phone was still displaying a video-call with a "male person with short dark hair" on the other end. Holmes reported the incident to her employer.

The next day, police officers from the Western Australian Police arrived at T.M.'s apartment and took statements from Holmes and T.M. T.M. gave the officers access to her phone and showed them her conversations with the man on Twitter and Discord. The man's Twitter username was "Andres" with the handle, "angar1982," while his Discord username was "Floridaguy0851." Officers scrolled through the Twitter chats and quickly saw a photograph of a male's penis. Other images showed the suspect's face, from which police "were able to establish an identity." Australian police were also able to deduce that the suspect resided in the United States and thus referred the case to Homeland Security. Laina Vittone, a special agent with Homeland Security Investigations in Orlando, took over the case. Agent Vittone's investigation revealed that the suspect was Andres Garcia.

After uncovering six-months' worth of sexual conversations and images exchanged between Garcia and T.M., Agent Vittone and her partner, Agent Gomez, searched Garcia's house in Celebration, Florida. Garcia agreed to speak with the agents, and he admitted that the Twitter and Discord accounts identified by T.M. were indeed his. He also admitted speaking to T.M. in the midst of a rough patch with his wife, telling the officers that T.M. "said she was 16, but honestly I don't know if that's the truth or not." He added: "She had said before that she was like 17[,] [t]hen she says that she's 14, which I didn't believe at all because she doesn't look 14."

Garcia was indicted by a grand jury for the Middle District of Florida for persuading, inducing, enticing, or coercing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count One) and receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Counts Two and Three). Garcia went to trial, and the jury found him guilty on all three counts.

At the first sentencing hearing, the district court determined that, before trial, Garcia's attorney had misadvised him about what the guidelines range would be if Garcia were found guilty at trial. In an effort to preemptively prevent a possible 28 U.S.C. § 2255 issue, the court therefore removed Garcia's trial attorney, appointed a new one, and rescheduled sentencing for a later date to allow the new attorney to prepare.

At the next sentencing hearing, the court noted that if Garcia's first attorney had properly advised him about the sentence he

24-11052               Opinion of the Court                    5

likely faced and Garcia had decided to instead plead guilty, his guidelines range would have been different. In particular, Garcia would not have received an obstruction enhancement because he would not have had the chance to perjure himself at trial, and he would have received a reduction for acceptance of responsibility. So, the court said it thought it "had a duty not to sentence [Garcia] under [his current] guidelines." For that reason, the court continued the hearing again so the parties could determine Garcia's guidelines based on the court's remarks.

At the third and final day of sentencing, the government said it had reached a plea agreement with Garcia to plead guilty to the enticement charge, and the government would recommend a sentence within the resulting guidelines range. Garcia's counsel agreed but said Garcia was not asking the court to set aside the jury verdict. The court responded that the evidence was "overwhelming," and the jury verdict would have been the same, regardless. After Garcia agreed with the court's statements, he went through a plea colloquy and pled guilty to the enticement count. Garcia and the court agreed that, after removing obstruction points, points for acceptance of responsibility, and points for distribution, the total offense level was 40. With a criminal history category of I, Garcia's guidelines range was 292 to 365 months' imprisonment. The district court sentenced him to 292 months' imprisonment. In the written judgment, the court announced that Garcia had been "found guilty" as to Counts One, Two, and Three of the indictment and adjudicated him guilty on all three counts. This appeal follows.

**II.**

Garcia argues, first, that his Sixth Amendment rights were violated because he was not given a "prior opportunity to cross-examine the victim," who was unavailable to testify at trial. Garcia asserts that he was unable to "confront his accuser on what the chats actually meant, i.e., whether all of the chats were role-playing done while the accuser was portraying herself as an adult pretending to be a minor." He adds that "[a]ll of the chat transcripts, whether the victim's cell phone actually belonged to the victim, and even the birth certificate (and who it actually belonged to), could not be confronted." The government responds that Garcia "has not shown a violation of his confrontation rights because he has not identified a single testimonial statement by the victim that the United States presented at trial."

We review *de novo* whether a hearsay statement is testimonial and implicates the Sixth Amendment's Confrontation Clause.[1] *United States v. Wilson*, 788 F.3d 1298, 1316 (11th Cir. 2015). The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause "bars the admission of the *testimonial* statements of a witness who did not appear at trial unless the witness was unavailable and the defendant had a prior opportunity to cross-examine him or her." *United States v. Caraballo*, 595 F.3d 1214, 1227 (11th Cir. 2010) (emphasis in original); *see also Crawford*

---

[1] Garcia did not object on the basis that the challenged evidence was impermissible hearsay, so we do not consider that question.

*v. Washington*, 541 U.S. 36, 53–54 (2004) (holding that the historical record supports the proposition that "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination").

"Testimony is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Wilson*, 788 F.3d at 1316 (internal quotations omitted). "Testimonial statements are ones 'that declarants would reasonably expect to be used prosecutorially.'" *Id.* (quoting *Crawford*, 541 U.S. at 51). In other words, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[ ] fall within the core class of testimony." *Caraballo*, 595 F.3d at 1228. Non-testimonial hearsay, while subject to traditional limitations on hearsay evidence, is not subject to the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821 (2006); *Caraballo*, 595 F.3d at 1227 (11th Cir. 2010).

Garcia had no Sixth Amendment right to confront the victim because the chat transcripts from Discord and Twitter were non-testimonial hearsay, so they were not subject to the Confrontation Clause. *See United States v. Mathis*, 767 F.3d 1264, 1278–79 (11th Cir. 2014), *abrogated on other grounds by Lockhart v. United States*, 577 U.S. 347 (2016) (holding that the admission of text messages at trial did not violate the Confrontation Clause because the text messages from the victim, whom the defendant had enticed into engaging in sexual activity, were "informal, haphazard

communications sent at all hours and from [various] locations," not "testimonial statements"). Garcia's chats with the victim were not formal statements to government officers, were not made during a custodial examination, and did not constitute an affidavit, prior testimony, or pretrial statements that either Garcia or the victim would reasonably expect to be used prosecutorially. *Id.* Because the chat logs include only non-testimonial hearsay, we conclude that the Confrontation Clause does not apply. *See Caraballo*, 595 F.3d at 1227. Garcia thus had no Sixth Amendment right to confront the victim on the issues he identified, including whether the victim's cell phone and birth certificate belonged to the victim.[2]

### III.

Next, Garcia argues that his "motions for judgment of acquittal should have been granted because his Sixth Amendment

---

[2] Within this section of his brief, Garcia also cursorily argues that his inability to confront the victim violated his Fifth Amendment right to due process. True, due process dictates that "[j]ust as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, [the accused] has the right to present his own witnesses to establish a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). But Garcia's attorney testified that he made no attempts to depose the victim before trial and, in fact, never "attempted to reach out and contact the victim, directly or indirectly." There is therefore no indication that Garcia would or could have presented the victim as his own witness. In any event, Garcia himself avers that "[t]he victim, a minor in Australia, was unavailable to the defense and possibly unavailable to the government," and that "the government's efforts or lack of effort to attain the attendance of the victim are irrelevant for the Constitutional issues before the Court."

right to confront his accuser was violated and the government otherwise failed to prove its case on all counts of conviction."

We review a district court's denial of a judgment of acquittal on sufficiency of evidence grounds, considering the evidence in the light most favorable to the government, and drawing all reasonable inferences and credibility choices in its favor. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.* at 1297. The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial. *Id.* When the government relies on circumstantial evidence, reasonable inferences (not mere speculation) must support the conviction. *Id.* Further, the jury is free to believe the testimony of one witness and reject the testimony of another. *United States v. Murray*, 527 F.2d 401, 410 (5th Cir. 1976).

When a defendant elects to take the stand and testify in his own defense, he runs a substantial risk of bolstering the government's case, because a statement by the defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt. *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004).

Under 18 U.S.C. § 2422(b), a defendant who, using any facility or means of interstate or foreign commerce, knowingly

persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be imprisoned. "[T]he term 'sexual activity for which any person can be charged with a criminal offense' does not require interpersonal physical contact, and [it] includes the production of child pornography." 18 U.S.C. § 2427. Under § 2252A(a)(2), any person who knowingly receives or distributes any child pornography shall be punished as provided in § 2252A(b).

Here, the district court did not err in denying Garcia's motions for judgment of acquittal because the evidence, considered in the light most favorable to the government, supports the jury's convictions. *See Capers*, 708 F.3d at 1296. At trial, Christine Mary Holmes, a disability support worker for juveniles in Western Australia who worked with the victim, testified that the victim "turned 14" in 2022. Chat transcripts showed that, while video-chatting, Garcia instructed the victim to remove her clothes, described the sex acts he wanted to perform on her, and instructed her to "touch herself" and "stick a finger" inside her vagina. This evidence was sufficient for the jury to conclude that, using the internet, Garcia persuaded, induced, or enticed the minor victim to engage in illicit sexual activity. *See* § 2422(b). Garcia counters that "there is no evidence that he said anything or did anything to threaten or intimidate the minor to engage in the activity that she did." And he insists that he never engaged in "unlawful behavior" with the victim. For one thing, § 2422(b) does not require threats or intimidation. For another, § 2422(b) requires the government to prove "that the

defendant took a substantial step toward causing assent, not toward causing actual sexual contact." *United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010). Stated another way, § 2422(b) "criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor." *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir. 2007); *see also Lee*, 603 F.3d at 914. And the term "sexual activity for which any person can be charged with a criminal offense" does not require interpersonal physical contact. *See* § 2427. The jury's verdict on § 2422(b) should not be overturned because a reasonable construction of the evidence allowed the jury to find Garcia guilty beyond a reasonable doubt. *Capers*, 708 F.3d at 1297.

The evidence was also sufficient for the jury to convict Garcia under § 2252A(a)(2), which, unlike § 2422(b), requires the government to prove the defendant's knowledge of the victim's minor status. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Garcia and the victim exchanged nude photographs, including "images of [the victim's] vagina with fingers used to spread the vagina open." Additionally, testimony showed that Garcia knew the victim was a minor when they exchanged nude photographs. A special agent for Homeland Security Investigations testified, for example, that the victim texted Garcia, "I might be only 14, carrying two kids, but I do know I'm doing a whole lot better than you," to which Garcia replied, "I thought you were 15." The victim later told Garcia for a second time that she was 14 years old, to which Garcia responded, "But you do look good." An officer in the

Western Australian Police Force who investigated this case also testified that the victim looked like a child. At trial, Garcia claimed that the victim told him she was a minor, but that he thought it was part of a role-playing game. However, a jury is entitled to disbelieve a defendant's testimony based on its own evaluation of his credibility. *See Murray*, 527 F.2d at 410; *Williams*, 390 F.3d at 1325. A jury's verdict should not be overturned if *any* reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Capers*, 708 F.3d at 1297. Looking at all the evidence and drawing all reasonable inferences and credibility choices in the government's favor, we think the evidence was sufficient for the jury to conclude that Garcia knew the victim was a minor when he encouraged and received child pornography from her.

We thus conclude that the district court did not err when it denied Garcia's motions for judgment of acquittal.

## IV.

Next, Garcia argues that his Sixth Amendment right to counsel was violated "when the district court refused to allow [him] to speak with his attorney during a recess in the trial." At trial, when the defense finished its direct examination of the Defendant, the court went into recess. At that point, Garcia's lawyer asked the court to talk to his client, acknowledging that "generally you can't talk to a witness when their testimony is in the halfway point." The government objected, noting that the Defendant was "at this point a witness, and he can't talk about testimony while he's on the

stand." The court denied the request, relying on *Perry v. Leeke*, 488 U.S. 272, 281 (1989). Garcia now argues that he had an "absolute right to speak with this attorney about what was going on in the case during the recess or recesses in question," such that the court's decision was a *per se* constitutional error.

We review a Sixth Amendment violation claim *de novo*. *United States v. Gari*, 572 F.3d 1352, 1361 (11th Cir. 2009). When a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. *Perry*, 488 U.S. at 281. He has an absolute right to such consultation prior to testifying, but neither he nor his lawyer has a right to have testimony interrupted in order to give him the benefit of his counsel's advice. *Id.* "Once the defendant places himself at the very heart of the trial process, it only comports with basic fairness that the story presented on direct is measured for its accuracy and completeness by uninfluenced testimony on cross-examination." *Id.* at 283.

In *Geders*, the Supreme Court held that a trial court's order directing a defendant not to consult with his attorney during a 17-hour overnight recess violated the defendant's Sixth Amendment right to counsel, because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that a defendant does have a constitutional right to discuss with his lawyer, including "tactical decisions to be made" and "strategies to be reviewed." 425 U.S. 80, 88 (1976). In *Perry*, on the other hand, the Court held that the *Geders* rule did

not apply to a similar order entered at the beginning of a 15–minute afternoon recess, at the conclusion of the defendant's direct examination. 488 U.S. at 274. In a short recess in which it is appropriate to presume that nothing but the "ongoing testimony" will be discussed, the testifying defendant does not have a constitutional right to advice. *Id*. at 284. The Constitution "does not compel every trial judge to allow the defendant to consult with his lawyer while his testimony is in progress if the judge decides that there is a good reason to interrupt the trial for a few minutes." *Id*. at 284–85.

Here, the district court did not err in preventing Garcia from speaking with his counsel during the 16-minute recess in between his direct examination and cross-examination. *Id*. at 284. He did not have a constitutional right to confer with his counsel during this short recess where it was appropriate to presume that "any conversation between [him] and [his] lawyer would [have] relate[d] to the ongoing testimony." *Id*. at 283–84. In sum, this case is more like *Perry* than it is like *Geders*. Therefore, we conclude that the district court's decision to prohibit Garcia from conferring with counsel during a 16-minute recess in the middle of his testimony did not violate the Sixth Amendment.

## V.

Finally, Garcia argues that reversal is required because he only entered into a post-trial guilty plea on one count of the indictment, yet the written judgment "contains three counts of conviction." He contends that his "plea of guilt on count one made the jury convictions on counts two and three a legal nullity" because

the "guilty plea superceded the jury verdict." He also argues that Counts Two and Three should not have been scored as part of his guideline range.

A party may not challenge as error a ruling or other trial proceeding invited by that party. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *Id.* "Where invited error exists, it precludes a court from invoking the plain error rule and reversing." *Id.* "If a party invites error, that error will not be grounds for reversal on appeal." *United States v. Puentes*, 803 F.3d 597, 604 (11th Cir. 2015) (internal quotations omitted).

In this case, Garcia invited any error regarding the judgment's inclusion of Counts 2 and 3. At sentencing, Garcia explicitly stated through his lawyer that he was "not asking [the court] to set aside the jury verdict," that he agreed with the government on the Guidelines range "based on Eleventh Circuit precedent," and that he was "properly scored at a level 40." So, as the government correctly identifies, Garcia agreed at sentencing "that his verdict—including the jury's finding of guilt for counts two and three—would stay in place." Therefore, even if the district court did err in imposing judgment on Counts Two and Three, Garcia invited it, and he has forfeited his right to seek reversal on these grounds.

We thus affirm Garcia's convictions and sentence.

**AFFIRMED.**